**UNITED STATES of America,
Appellee,**

v.

**William Lloyd BAILEY, Appellant.**

**No. 71-2531.**

United States Court of Appeals,
Ninth Circuit.

March 21, 1972.

Rehearing and Rehearing En Banc
Denied June 1, 1972.

Philip Fahringer (argued) of O'Dowd, Fahringer & Diamos, Tucson, Ariz., for appellant.

James Wilkes, Asst. U. S. Atty. (argued), William C. Smitherman, U. S. Atty., Tucson, Ariz., for appellee.

Before DUNIWAY, HUFSTEDLER and KILKENNY, Circuit Judges.

HUFSTEDLER, Circuit Judge:

Bailey appeals from his conviction for bank robbery in violation of 18 U.S.C. § 2113(a), (d) and (e). The pivotal issue on appeal is the validity of two search warrants, pursuant to which incriminating evidence was seized.

Bailey and his codefendant Cochran robbed a branch office of Western Savings and Loan Bank in Globe, Arizona, on April 2, 1971. They took $8490 in travelers checks and $3056 in cash. In the course of the robbery, Bailey captured and held as hostages the manager of the bank and his family. About six weeks after the robbery, on May 12, 1971, Bailey and Cochran were arrested more than 100 miles from Globe in Tucson, Arizona. At the time of his arrest, Bailey was driving a 1970 Pontiac Grand Prix automobile bearing Colorado license plates. He was accompanied by an unidentified person. Cochran was arrested in a house in Tucson later the same day at which time she told one of the FBI agents that she had borrowed the Pontiac from a friend of hers in Denver about a month after the Globe robbery.

■ Search warrants were issued the day after the arrests had been made. One warrant was issued to search the Pontiac, and the other was issued to search the house in which Cochran was arrested. Both warrants were issued upon the affidavits of Lewis Fain, a Special Agent of the FBI. The affidavits are set forth in full in the margin.[1]

---

1. AFFIDAVIT FOR SEARCH WARRANT

LEWIS A. FAIN, being duly sworn, on his oath, deposes and says:

That he is a Special Agent, Federal Bureau of Investigation;

That he assisted in the investigation of the robbery of the Western Savings and Loan Association in Globe, Arizona, on or about April 2, 1971, and the kidnapping of the Gustafson family on the same date and that affiant also assisted in the apprehension of one of the suspects, namely, WILLIAM LLOYD BAILEY, in the above-described vehicle;

That your affiant believes from his investigation and investigation of other Special Agents of the Federal Bureau of Investigation that a robbery occurred of the Western Savings and Loan Association on or about April 2, 1971, in Globe, Arizona, in which approximately THREE THOUSAND FIFTY-SIX DOLLARS ($3,056.00) in cash and EIGHT THOUSAND FOUR HUNDRED NINETY DOLLARS ($8,490.00) in American Express Travellers Cheques were taken.

Investigation revealed that Rod Gustafson identified the female suspect by photograph as being the person who accompanied him to the Western Savings and Loan Association and whom he gave the cash and cheques. This female was known to be a person by the name of BARBARA LYNN COCHRAN. The male suspect was identified by photograph by Mrs. Gustafson and Rod Weinberg, Chief of Police, Globe, Arizona, indicated this person's name to be WILLIAM LLOYD BAILEY. Mrs. Gustafson indicated that WILLIAM LLOYD BAILEY was the person who forced her and members of her family from their home immediately prior to the robbery to a remote spot near Globe, Arizona, as hostages.

Rod Gustafson furnished information that the female robber who accompanied him to the Association used a large brown manila envelope to carry the money obtained from the robbery.

Rod Gustafson stated the register for American Express Company Travellers Cheques maintained by the Association reflected the below-described American Express Company Travellers Cheques were taken in the robbery:

$10 denominations Serial No. AA 51–173–329 thru 379

$20 denominations Serial No. EA 89–674–596 thru 739

$20 denominations Serial No. EA 90–028–050 thru 149

$50 denominations Serial No. HA 19–468–548 thru 589

$100 denominations Serial No. RA 12–204–030 thru 039

In addition, approximately THREE THOUSAND FIFTY-SIX DOLLARS ($3,056.00) in cash was taken by the female robber.

Rod Gustafson and his wife, Marjorie, have advised the male robber was armed with a blue steel revolver and was dressed in multi-colored striped levis with a flare at the bottom, a gold cardigan

sweater, dark brown Indian style moccasins. The female robber was dressed in blue jeans, flared at the bottom, a rose colored knit top and a dark jacket.

WILLIAM LLOYD BAILEY was identified as the person who physically assaulted Rod Gustafson with a pistol.

That on or about May 12, 1971, WILLIAM LLOYD BAILEY was apprehended in the described 1970 Pontiac vehicle in Tucson, Arizona, and that your affiant has reason to believe that said vehicle may contain the following:

currency and American Express Travellers checks as follows:

$10 denominations Serial No. AA 51–173–329 thru 379

$20 denominations Serial No. EA 89–674–596 thru 739

$20 denominations Serial No. EA 90–028–050 thru 149

$50 denominations Serial No. HA 19–468–548 thru 589

$100 denominations Serial No. RA 12–204–030 thru 039

Also a dark blue revolver; a large brown manila envelope; clothing as follows:

multi-colored striped levis, gold cardigan sweater, dark brown Indian style moccasins, flared blue jeans, rose colored striped knit top shirt, dark colored jacket

and any other books, records, or instrumentalities used in the commission of the robbery and kidnapping or related thereto. . . . (R.A., pages 37, 39–41.)

The search warrant for the home contained the following affidavit:

### AFFIDAVIT FOR SEARCH WARRANT

LEWIS A. FAIN, being duly sworn, on his oath, deposes and says:

That he is a Special Agent, Federal Bureau of Investigation;

That he assisted in the investigation of the robbery of the Western Savings and Loan Association in Globe, Arizona, on or about April 2, 1971, and the kidnapping of the Gustafson family on the same date and that affiant also assisted in the apprehension of one of the suspects, namely, WILLIAM LLOYD BAILEY, in a 1970 Pontiac Grand Prix, black vinyl over olive drab green, license BB 3509 Colorado;

That your affiant believes from his investigation and investigation of other Special Agents of the Federal Bureau of Investigation that a robbery occurred of the Western Savings and Loan Association on or about April 2, 1971, in Globe, Arizona, in which approximately THREE THOU-

SAND FIFTY-SIX DOLLARS ($3056.-00) in cash and EIGHT THOUSAND FOUR HUNDRED NINETY DOLLARS ($8490.00) in American Express Travellers Cheques were taken.

Investigation revealed that Rod Gustafson identified the female suspect by photograph as being the person who accompanied him to the Western Savings and Loan Asoation and whom he gave the cash and cheques. This female was known to be a person by the name of BARBARA LYNN COCHRAN. The male suspect was identified by photograph by Mrs. Gustafson and Rod Weinberg, Chief of Police, Globe, Arizona, indicated this person's name to be WILLIAM LLOYD BAILEY. Mrs. Gustafson indicated that WILLIAM LLOYD BAILEY was the person who forced her and members of her family from their home immediately prior to the robbery to a remote spot near Globe, Arizona, as hostages.

Rod Gustafson furnished information that the female robber who accompanied him to the Association used a large brown manila envelope to carry the money obtained from the robbery.

Rod Gustafson stated the register for American Express Company Travellers Cheques maintained by the Association reflected the below-described American Express Company Travellers Cheques were taken in the robbery:

$10 denominations Serial No. AA 51–173–329 thru 379

$20 denominations Serial No. EA 89–674–596 thru 739

$20 denominations Serial No. EA 90–028–050 thru 149

$50 denominations Serial No. HA 19–468–548 thru 589

$100 denominations Serial No. RA 12–204–030 thru 039

In addition, approximately THREE THOUSAND FIFTY-SIX DOLLARS ($3056.00) in cash was taken by the female robber.

Rod Gustafson and his wife, Marjorie, have advised the male robber was armed with a blue steel revolver and was dressed in multi-colored striped levis with a flare at the bottom, a gold cardigan sweater, dark brown Indian style moccasins. The female robber was dressed in blue jeans, flared at the bottom, a rose colored knit top and a dark jacket.

WILLIAM LLOYD BAILEY was identified as the person who physically assaulted Rod Gustafson with a pistol.

That at the time of WILLIAM LLOYD BAILEY'S apprehension on May 12, 1971, in Tucson, Arizona, a surveillance was placed on the above-described premises by other Special Agents of the Fed-

In substance, each affidavit amply described Bailey and Cochran, the circumstances of the robbery and abductions, and the articles that were the objects of the search. However, neither affidavit stated any facts to support the affiant's conclusions that he had reason to believe that the automobile and the house, respectively, contained the objects of the searches, other than the facts that Bailey had been arrested in the automobile and that Cochran had been arrested in the house. The search of the Pontiac, pursuant to the warrant, yielded some of the stolen travelers' checks.[2] The search of the house yielded clothing worn during the robbery.

Bailey's motion to suppress that evidence on the ground that the search warrants were invalid was denied. We hold that the denial of the motion was erroneous because neither affidavit met the constitutional standards of Aguilar v. Texas (1964) 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 and Spinelli v. United States (1969) 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637.

*Aguilar* requires that a magistrate's determination of probable cause justifying the issuance of a warrant must be supported by an affidavit that discloses the underlying circumstances from which the affiant has concluded that his information is reliable and that it must contain a statement of the underlying circumstances "to enable the magistrate independently to judge of the validity" of the affiant's conclusion that the things to be seized are where he says they are. (393 U.S. at 413, 89 S. Ct. at 587.)

In applying *Aguilar* in Durham v. United States (9th Cir. 1968) 403 F.2d 190, 193, we said that:

"The facts submitted to the Commissioner must be sufficient to justify a conclusion by him that the property which is the object of the search is probably on the person or premises to be searched *at the time the warrant is issued.* The most convincing proof that the property was in the possession of the person or upon the premises at some remote time in the past will not justify a present invasion of privacy. . . ." (Emphasis added.)

The only fact set forth in the affidavit to support the affiant's conclusion that the described articles might be in the Pontiac was that Bailey was apprehended in the vehicle six weeks after the robbery. There is no indication that the car had been used in the robbery, that Bailey owned it, or that he had even been seen in it before his arrest. Under these circumstances, there was no foundation for any inference that the auto-

---

eral Bureau of Investigation. Following the arrest of WILLIAM LLOYD BAILEY, BARBARA LYNN COCHRAN was arrested at the above-described address by Special Agents of the Federal Bureau of Investigation. Special Agents have observed WILLIAM LLOYD BAILEY at the above-described premises on or about April 23, 1971, and at other subsequent times.

Your affiant has reason to believe that said above-described premises may contain the following:

currency and American Express Travellers Cheques as follows:

$10 denominations Serial No. AA 51–173–329 thru 379

$20 denominations Serial No. EA 89–674–596 thru 739

$20 denominations Serial No. EA 90–028–050 thru 149

$50 denominations Serial No. HA 19–468–548 thru 589

$100 denominations Serial No. RA 12–204–030 thru 039

also a dark blue revolver; a large brown manila envelope; clothing as follows:

multi-colored striped levis, gold cardigan sweater, dark brown Indian style moccasins, flared blue jeans, rose colored striped shirt, dark colored jacket

and any other books, records, or instrumentalities used in the commission of the robbery and kidnapping or related thereto. . . .

2. Agents searched the Pontiac for weapons when Bailey was arrested. No weapons were found, but the agent did find "papers and other matters" in the console, where the subsequent search located the checks.

mobile contained the fruit of the search.[3]

The affidavit in support of the search of the house is no better than the affidavit for the automobile warrant. The affidavit simply discloses that Bailey had been seen at the house and that Cochran was arrested there. No facts are recited from which it could be inferred that Bailey and Cochran were other than casual social guests at the residence. At the trial, there was evidence that Bailey and Cochran had leased the house, but that fact was not before the issuing magistrate.

> "[A]ll data necessary to show probable cause for the issuance of a search warrant must be contained within the four corners of a written affidavit given under oath. . . ." United States v. Anderson (9th Cir. 1971) 453 F.2d 174, 175.

*See also* Giordenello v. United States (1958) 357 U.S. 480, 78 S.Ct. 1245, 2 L. Ed.2d 1503. In short, there is nothing but conjecture to sustain the conclusion that the house contained the objects of the search. As we observed in United States v. Lucarz (9th Cir. 1970) 430 F. 2d 1051, 1055:

> "[S]imply from the existence of probable cause to believe a suspect guilty, [it does not follow in all cases] that there is also probable cause to search his residence. If that were so, there would be no reason to distinguish search warrants from arrest warrants, and cases like Chimel v. California, 395 U.S. 752 [89 S.Ct. 2034, 23 L.Ed. 2d 685] (1969), . . . would make little sense."

■ The Government argues that the searches can be upheld even though the warrants are invalid on the theory that the searches were incident to the arrests. They weren't. The search of the automobile was accomplished at both a time and a place substantially removed from the arrest. Also, the search of the house substantially exceeded the scope permissible by *Chimel, supra.*

The Government also argues that the search of the automobile could be sustained under the doctrine of Chambers v. Maroney (1970) 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419. The facts do not bring the case within the *Chambers* ambit. There was no probable cause to believe the vehicle contained the fruit of the crime. There were no exigent circumstances justifying the search. (Coolidge v. New Hampshire (1971) 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564.)

The evidence produced from the illegal search was highly incriminating. We cannot say that "beyond a reasonable doubt . . . the error complained of did not contribute" to the conviction. Chapman v. California (1967) 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705.

The judgment is reversed and the cause is remanded for a new trial.

KILKENNY, Circuit Judge (dissenting):

If either of the searches was valid, the judgment should be affirmed on the theory that the error complained of did not, beyond a reasonable doubt, contribute to the conviction. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L. Ed.2d 705 (1967); Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969). Both searches, in my opinion, were valid and should be upheld.

---

3. The Government's reliance on Porter v. United States (9th Cir. 1964) 335 F.2d 602 is misplaced. In *Porter,* the affidavit "disclosed that the automobile to be searched belonged to the person who had been identified as the robber by the bank teller . . . ; that the automobile had been registered in another state under a fictitious name [by that same person]; that [the items] sought were not on the person of the owner of the automobile when he had been arrested" and that he was not "a person settled in the community" and thus his automobile was probably the most promising place to look for the objects sought. 335 F.2d at 604.

Contrast also the affidavit upheld in United States v. Brown (9th Cir. 1972) 455 F.2d 1201.

## THE AUTOMOBILE SEARCH

The affidavit makes it crystal clear that appellant was the bank robber or at least one of the participants in the robbery. It identifies the checks and currency which were stolen from the bank, the clothing worn by the robbers and the pistol used at the time of the robbery. The affidavit clearly establishes that the bank robber was "apprehended"[1] in a 1970 Pontiac vehicle and that the affiant had reason to believe that the vehicle might contain the fruits of the robbery and the personal property above mentioned. From the foregoing, the Magistrate could reasonably infer: (1) that the bank robber would be in possession of some of the fruits of the robbery; (2) that he would have some of the fruits with him in the automobile; (3) that the robber either before or during the apprehension would conceal some of the fruits in the automobile; and (4) that probable cause existed for the issuance of the search warrant.

The fact that the apprehension occurred some one hundred miles from the scene of the robbery and over one month later is beside the point. In these circumstances, reason still dictates that the robber would probably have some of the fruits either on his person or in the vehicle he then occupied. The affidavit makes it clear that the fruits of the robbery were still missing. Where would be a better place to look than in the area in which the robber is apprehended?

We have recently said that in determining the sufficiency of a search warrant, the Magistrate must look to the nexus between the items which are the subject of the search, the place to be searched and the type of crime committed. The nature of the items and the extent of the suspect's opportunity for concealment, normal inferences as to where a criminal would be *likely to hide the stolen property*, and related matters must be considered in determining whether or not the search warrant is sufficient. United States v. Lucarz, 430 F.2d 1051, 1055 (9th Cir. 1970).

The only real difference, if any, between the facts outlined in the instant affidavit and those before the court in Porter v. United States, 335 F.2d 602 (9th Cir. 1964), is that in *Porter* the affidavit alleged that he was the owner of the automobile. Here, the affidavit charges that appellant was apprehended in the automobile. To me this is a distinction without a significant difference. Since it does not appear in the affidavit, we must assume that the Magistrate did not know that the robber was the driver. However, he did know that the robber was found in the confined space of the inside of an automobile and from the facts before him could draw the inferences previously mentioned whether the robber was the driver or not.

From all of the facts and circumstances before him, the Magistrate could logically deduce that the bank robber probably had some of the checks and money with him at the time of the arrest and, no doubt, would strongly suspect that if the robber had such contraband with him, he would hurriedly conceal it some place in the vehicle in which he was apprehended.

Aside from the validity of the search warrant, I believe the search can be upheld on the theory that the searching officers had probable cause to make the search without a warrant. The searching officers knew that the robber was the driver of the automobile and that certain paper documents were in the console. These were facts known to the officers which were not specifically mentioned in the affidavit. The overall rationale, if not the decision, of Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), supports this view. White v. United States, 448 F.2d 250, 254 (8th Cir. 1971), is directly in point, I quote from the opinion:

"While the defendant has attacked the validity of the search warrant in this case, we do not find it necessary to pass on this question, because we believe that the search can be justi-

---

1. In fact, he was the driver.

fied as a warrantless search based upon probable cause under the principles of Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970)."

I would approve the search of the automobile.

## THE HOME SEARCH

The affidavit supporting the issuance of the warrant for the search of the home reveals that appellant's female co-conspirator in the bank robbery, the lady who used the large brown manila envelope to carry the money obtained in the robbery, was arrested at 2256 E. Prince Road, Tucson, Arizona. The affidavit reveals that the home had been under surveillance for some time and that appellant was observed in the premises on April 23, 1971, and at other subsequent times prior to the arrest. The affidavit clearly sets forth the joint activities of appellant and the female co-conspirator immediately prior to and at the time of the robbery. From the facts stated in the affidavit, the Magistrate could reasonably infer: (1) that appellant or his co-conspirator, or both, were occupying the premises; (2) that as occupants, they might well have concealed on the premises a portion of the fruits of the robbery or the clothing which they wore at the time; and (3) probable cause existed for the issuance of the warrant. The logic employed by our court in *Lucarz, supra,* is here of particular significance. I quote from the opinion:

> "The affidavit demonstrated the theft of the sort of materials that one would expect to be hidden at appellant's place of residence, both because of their value and bulk." 430 F.2d at 1055.

The affidavit should be interpreted in a common sense and realistic manner, United States v. Ventresca, 380 U.S. 102, 108–109, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965), and the warrant should issue when a man of reasonable caution would be of the belief that the items to be seized were in a particular location. Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949).

I would affirm the judgment of the lower court.