**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Kenneth Alvin HENDERSHOT, Defendant-Appellant.**

No. 79–1591.

United States Court of Appeals, Ninth Circuit.

Feb. 7, 1980.

Douglas A. Low, Gallagher, Soley & Gollmer, Fresno, Cal., for defendant-appellant.

James E. White, Fresno, Cal. (argued), for plaintiff-appellee; Mio D. Quatraro, Asst. U. S. Atty., Fresno, Cal., on brief.

Before TRASK and SNEED, Circuit Judges, and GRAY *, District Judge.

SNEED, Circuit Judge:

Appellant seeks reversal of his conviction for armed bank robbery in violation of 18

U.S.C. § 2113(a). He contends that (1) certain evidence should be suppressed because of inadequacies in the affidavit supporting the search warrant, (2) a shoeprint from the scene of the crime should have been excluded, (3) certain remarks of the prosecutor constituted improper comment on appellant's failure to take the stand, and (4) his prior conviction should have been determined to be inadmissible under Federal Rule of Evidence 609(a)(1). We agree only with the last contention and reverse on that ground. Because a new trial is likely, it is appropriate that we explicitly rule on the appellant's remaining contentions. We conclude that none is meritorious.

I.

FACTUAL BACKGROUND

The robbery occurred at the United California Bank, Tower Branch, in Fresno, California on March 9, 1979, by two masked robbers who escaped in a stationwagon owned and driven by Melba New with whom the appellant lived prior to the robbery. Shortly before the robbery, the appellant was seen with New in Chowchilla, California, driving a primer-colored Camaro. Several hours after the robbery New was arrested in her stationwagon which contained masks, shoes, and a gun similar to those used by the robbers. Appellant was linked to the robbery when his fingerprints were found on the car, hair similar to his was found on one of the masks, and his short and stocky build was found to match that of one of the robbers.

Ten days after the robbery, on March 19, 1979, appellant was arrested in Oregon in a primer-colored Camaro. On the basis of an affidavit set forth in the margin[1] a war-

---

* Honorable William P. Gray, United States District Judge for the Central District of California, sitting by designation.

1. DISTRICT OF OREGON
   STATE OF OREGON
   AFFIDAVIT
   I, DANIEL S. JACOBS, being first duly sworn, depose and say that I am a Special Agent of the FBI, assigned to the Portland Division, Pendleton, Oregon Resident Agency,

and in the course of my investigation in connection with the robbery of the United California Bank, Tower Branch, Fresno, California on March 9, 1979, did obtain the following information from Special Agent Charles B. Sullivan, Sacramento Division of the FBI:

rant to search the Camaro was obtained. The search revealed bait bills from the robbery and a pair of size 5½ shoes. Appellant was arrested and at that time denied having been in Fresno on the day of the robbery.

At the trial an impression of a shoeprint left at the scene of the robbery, which was lifted by a police technician using a fingerprint lifting technique, was introduced in evidence. A qualified expert expressed the opinion that the shoeprint was made by a shoe that was found in New's car and was the same size as the shoe found in appellant's Camaro. New testified that the shoes in her car belonged to her or her son.

Appellant did not take the stand following a ruling by the trial court that his prior conviction for armed robbery could be used to impeach his credibility. He sought to preserve his right to have the trial court's decision reviewed by establishing on the record his intention to take the stand if his prior conviction were excluded and outlining the nature of his testimony to enable the trial court to apply Rule 609(a)(1). *See United States v. Cook*, 608 F.2d 1175, 1186

(9th Cir. 1979). Appellant offered to testify that the bait money found in his car was given to him by New, information that New herself refused to supply.

During the trial the prosecutor, commenting on the ownership of the shoes found in New's car, stated that "you've not heard testimony that they are not Kenneth Hendershot's." Appellant objected to this observation as improper under the Fifth Amendment. The prosecutor apologized and a curative instruction was promptly given by the trial court.

## II.

### APPELLANT'S PRIOR FELONY CONVICTION

■ On the basis of the record before us, we hold that appellant successfully preserved his right to have the trial court's ruling reviewed under principles we announced in *United States v. Cook*. Appellant's showing was sufficient to enable the trial court to comply with the weighing process Rule 609(a)(1) requires. Application of *Cook* to the facts of this case involves no

On March 9, 1979, the United California Bank, (UCB) Tower Branch, Fresno, California, was robbed by two white males, wearing ski masks, one of the robbers being described as five feet four inches in height, stocky or muscular build, wearing a light colored sweat shirt with a hood, dark pants and dark colored running shoes with light colored rubber soles. The robbers were carrying handguns, one described as an automatic and the other a revolver, all of the above in violation Title 18, Section 2113(a)(d), U.S. Code.

In addition your affiant was told that one and one half hours before the robbery took place, KENNETH ALVIN HENDERSHOTT was seen in possession of a 1967 to 1970 Chevrolet Camaro, rust primer in color and that HENDERSHOTT was in possession of this Chevrolet Camaro soon after the robbery of the UCB in Fresno, California March 9, 1979.

Your affiant was also advised that probable cause was developed to charge KENNETH ALVIN HENDERSHOTT with the robbery of the UCB, Tower Branch, Fresno, California, on March 9, 1979, and that a magistrate's warrant of arrest was issued for HENDERSHOTT at Fresno, California, on March 19, 1979, charging violation T 18, Section 2113(a)(d), U.S. Code.

Your affiant was also told that loot in excess of $10,000.00 was taken in the March 9, 1979,

robbery of the UCB, Tower Branch, Fresno, California, and that this loot included thirty bait bills.

Your affiant located KENNETH ALVIN HENDERSHOTT at Milton-Freewater, Oregon, on March 20, 1979, in possession of a 1967 Chevrolet Camaro, primer rust in color, bearing California license 826 DXU, VIN 124377L126876, and placed him under arrest for the above mentioned bank robbery. HENDERSHOTT admitted his identity and admitted being the owner of the Chevrolet Camaro. Based on observation of HENDERSHOTT, he matches the description of one of the robbers of the UCB, Tower Branch, Fresno, California, March 9, 1979.

Based on my experience from prior bank robbery investigations, I am aware that bank robbers frequently keep clothing, weapons, loot disguises and other items of evidence in their automobiles.

/S/
DANIEL S. JACOBS

Subscribed and sworn to before me this 20 day of March, 1979.

/S/
ARTHUR R. BARROWS
United States Magistrate

retroactivity inasmuch as appellant's trial occurred subsequent to June 29, 1979, the date *Cook* was filed.

■ Turning to the merits, we hold that it was error for the trial court to rule that the appellant's prior felony conviction for armed robbery could be used for impeachment purposes if appellant took the stand. We reach this conclusion because it is not clear that the trial court properly applied Rule 609(a)(1), which requires that the prosecution bear the burden of establishing that the probative value of admitting a prior conviction for a crime not involving "dishonesty or false statement" outweighs its prejudicial effect to the defendant. Instead of articulately striking a balance between probative value and prejudice as Rule 609(a)(1) requires, the record suggests the possibility that the trial court believed no such balance was required in the absence of a showing by the appellant that the preju-

dice "far outweighed" the prior conviction's probative value. This possibility arises because of the prosecution's reliance on *Gordon v. United States*, 127 U.S.App.D.C. 343, 383 F.2d 936 (D.C.Cir.1967). *Gordon*, in explaining *Luck v. United States*, 121 U.S.App.D.C. 151, 348 F.2d 763 (D.C.Cir.1965), observed that the burden of persuasion was on the accused to show that the prejudice to him from the admission of prior convictions for impeachment purposes far outweighed its probative value. 127 U.S.App.D.C. at 346, 383 F.2d at 939. Counsel for appellant did not acquiesce in the prosecution's use of *Gordon*; rather, he pointed specifically to Rule 609(a)(1) and correctly asserted that exclusion was appropriate when "the prejudicial effect of the prior condiction [sic] would outweigh its probative value." The trial court gave no indication of what standard it was employing; it merely ruled that the prior conviction would be admissible.[2]

2. The relevant portion of the transcript is set out below. It should be understood that in setting forth this portion of the transcript we express no opinion with respect to the assertions of appellant's counsel as to manner in which Rule 609(a)(1) should be applied other than those which we approved in the text of our opinion.

MR. FARMER: Yes, Your Honor. At this time we would make a motion in limine to request the court to not allow the use of a prior felony conviction for impeachment purposes of Mr. Hendershot, the defendant in this action. Mr. Hendershot's desire is to take the stand in this matter. As the court is aware from my previous serverance motion, plus the testimony that has been elicited in this case, his testimony it's imperative that we get before this jury concerns the fact that the money, the bait money that was found in his car was given to him by Miss New. We are unable, obviously she has refused to answer about that aspect of the case and we are unable to get that information from Miss New. Therefore, the only source of that information is from Mr. Hendershot. Mr. Hendershot's prior conviction is in 1967 in the state of Oklahoma for armed robbery. And pursuant to rule 609a(1), the court does have the discretion not to allow impeachment by prior conviction under the appropriate circumstances.

Those appropriate circumstances are whether the prejudicial effect of the prior condition would outweigh its probative value. Now the factors to be considered in trying to balance this, those tests are, or one factor is

the similarity of the past crime and the one he is charged for. Obviously they are identical. Although it was not bank robbery we were dealing with in 1967, but it is armed robbery. So we have an identical crime that can be nothing but heavily prejudicial as far as this jury is concerned.

Another test is the importance of the testimony. It is vitally important that Mr. Hendershot be allowed to present his case. This is not a situation where there is an overwhelming evidence of guilt, it is a closely balanced case. And his testimony may be that quantum of testimony that would allow us to prevail in this matter. So it is highly important and it is highly relevant, the evidence that he wants to present to the court.

The conviction is in excess of ten years, which is one of the criteria in the section. Although it does say from release. But I do think that the fact that it is 1967 should have some bearing.

The records provided to me today would not be a valid record of a prior conviction. In other words, it is my belief from looking at the face of the record that it is constitutionally invalid because it does not provide in the document itself proof of a waiver to this right to trial, right to confrontation and right against self-incrimination. Those records are not in the prior conviction. That is another factor under *Volper v. Betto*, U.S. 473 and U.S. 496 Federal Reporter, and *U.S. v. Dormand*, that should prevent the use of this prior conviction against Mr. Hendershot.

THE COURT: Do you wish to be heard on the matter?

As indicated, Rule 609(a)(1) placed the burden of persuasion on the prosecutor, and admission is conditioned upon probative value outweighing prejudice. Although we have recognized that the balancing required by Rule 609(a)(1) constitutes an exercise of the trial court's discretion which should be overturned only upon a showing of an abuse, *United States v. Cook*, 608 F.2d 1175 (9th Cir. 1979), this case must be resolved differently because of the possibility that the trial court applied the improper legal standard of *Gordon*. Under these circumstances, we are unable to say that the trial court did not abuse its discretion.

Once more, as in *Cook*, we recognize that serious crimes, other than those of "dishonesty or false statement," are admissible, provided the trial court exercises its discretion to so admit them in accordance with the principles of Rule 609(a)(1). *United States v. Cook*, 608 F.2d 1175, at 1187, 1979. The proviso is important. Although appellate courts should not overturn evidentiary rulings of trial courts based on the proper exercise of their discretion, it is a primary obligation of appellate courts to insist that this discretion be exercised within the applicable framework of legal rules.

In some instances this framework may impose no standard at all or none other than good faith and the avoidance of arbitrariness. In others it is more restrictive. The framework of Rule 609(a)(1) is one of the latter. Congress, after much debate, created a framework in which, with respect to a defendant, the burden of persuasion is placed upon the prosecution and a particular process of weighing is required. Both we and the trial courts must respect that decision.

## III.

## THE AFFIDAVIT SUPPORTING THE SEARCH WARRANT

Appellant argues that the affidavit set forth above is insufficient because (1) it did not show that it was more likely than not that the evidence sought would be in the car as opposed to appellant's house, (2) it did not contain sufficient detail to enable the magistrate to evaluate independently the reliability of the hearsay statement that appellant was seen in the Camaro before and after the crime, and (3) it contained a misrepresentation that allowed the magistrate to infer that the Camaro was used in

MS. QUATRARO: Yes, Your Honor. To begin with, the validity of the prior conviction would be a matter that would be outside of this court's jurisdiction. It would have to be struck in another court as to whether or not it was valid. We believe that there was the conviction and it is valid proof. Under *Gordon v. The United States*, the standard of whether the trial judge believes the prejudicial effect of an impeachment would have to far outweigh the probative value of the prior conviction, then it goes to the issue of credibility. I don't believe the defendant in this case has met that burden in any way.

The evidence is clearly represented in this case. If he intends to take the stand, he should take the stand being impeached by his prior and take the chance the same way that the witness took the chance that he would be testifying against who admitted to his prior conviction when he was brought into court. I don't believe that would be an outweighing—that the prejudicial effects would outweigh the probative value or vice versa in this case.

I think what we have, if he's going to testify, there is no law that says other than the judge's discretion that his prior cannot be introduced. And they have not met their burden, which it is their burden to meet.

MR. FARMER: Your Honor, we'd like to briefly respond to that. I have Federal Courtroom evidence by Kotchett and Elkine. The cites in here in some cases indicates that the prosecution has the burden of proof on the issue of the lack of prejudicial effect not outweighing the probative value. And they have cited *United States v. Mallone*, 537 F.2d 922, and *United States v. Wilson*, 536 F.2d 883. And also *United States v. Russo*, 540 F.2d 1152. So I think that the burden of proof, as in the total criminal case, is on the prosecution on that issue. And I think it's very clear that the prejudice in this case regarding that prior would far outweigh the fact that yes, they will get to say Mr. Hendershot, weren't you convicted of an armed robbery in 1967. That is so long ago and this case is so important now that it is obviously highly prejudicial.

THE COURT: Well, I think it's admissible, so I'll deny your motion.

MS. QUATRARO: You deny the motion?

THE COURT: Yes.

4 Reporter's Transcript 249–52.

the robbery. None of these contentions has merit.

■ First, the "more-likely-than-not" standard is improper. It is only necessary that the affidavit enable the magistrate to conclude that it would be reasonable to seek the evidence in the place indicated by the affidavit. *United States v. Melvin*, 596 F.2d 492, 495 (1st Cir. 1979); *see also United States v. Brown*, 455 F.2d 1201, 1203 (9th Cir.), *cert. denied*, 406 U.S. 960, 92 S.Ct. 2069, 32 L.Ed.2d 347 (1972); *Porter v. United States*, 335 F.2d 602, 604 (9th Cir. 1964); *United States v. Lucarz*, 430 F.2d 1051 (9th Cir. 1970). The affidavit conforms to this standard. Nor is a conclusion of the affiant, "[b]ased on my experience from prior bank robbery investigations," improper. It is not necessary to detail that experience to determine that the conclusion is not capricious. *See Jaben v. United States*, 381 U.S. 214, 224–25, 85 S.Ct. 1365, 14 L.Ed.2d 345 (1965); *see also United States v. Dubrofsky*, 581 F.2d 208, 212–13 (9th Cir. 1978).

■ The hearsay statement "that one and one half hours before the robbery took place, Kenneth Alvin Hendershott [sic] was seen in possession of a 1967 to 1970 Chevrolet Camaro, rust primer in color," was sufficiently supported to permit independent evaluation by the magistrate. Support consisted of facts that appellant was arrested while in the Camaro, that he admitted he owned the Camaro, and that his build matched that of one of the robbers.

■ Finally, appellant argues that the affidavit permits the inference that the Camaro was used in the robbery and that such inference is a misrepresentation. There are two answers to this. The first is that the inference is not a compelling one. The affidavit is consistent with what the fact appear to have been, *viz.*, that the Camaro was used both before and after, but not in connection with, the robbery. The second is that appellant has failed to show that the misrepresentation was intentional or reckless and that it was prejudicial. *See Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).

## IV.

### ADMISSIBILITY OF THE SHOEPRINT

■ Appellant's objection to the admissibility of the shoeprint is based essentially on the contention that lifting shoeprints by fingerprint lifting techniques is not sufficiently accepted by crime technicians generally to justify its admissibility. *See United States v. Amaral*, 488 F.2d 1148, 1153 (9th Cir. 1973); *accord, United States v. Brown*, 557 F.2d 541, 556 (6th Cir. 1977). The technician who lifted the shoeprint was well qualified to employ the fingerprint technique and he testified that it had been used for shoeprints by Santa Clara and Fresno technicians and that it is taught as a shoeprint lifting technique at a Modesto crime scene investigation course. This is enough to make the shoeprint admissible in the absence of any evidence discrediting the lifting technique. No discrediting evidence was offered by the appellant. *Cf. United States v. Kilgus*, 571 F.2d 508, 510 (9th Cir. 1978) (unrebutted testimony of defendant's expert witness that technique for identifying flying aircraft was not generally accepted among scientific community rendered testimony based on that technique inadmissible).

## V.

### PROSECUTOR'S COMMENT

■ The prosecutor's comment was ill advised but any *Griffin* error was harmless beyond a reasonable doubt. *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); *see also Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The promptly given curative instruction negated the improper inference that the prosecutor's comment made possible.

Reversed and Remanded.