**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Alfredo Jiminez FLORES,**
**Defendant-Appellant.**

No. 80–1705.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 9, 1981.

Decided June 8, 1982.

Rehearing and Rehearing En Banc
Denied Aug. 19, 1982.

174

Daniel F. Cook, Asst. Fed. Public Defender, San Jose, Cal., for defendant-appellant.

* The Honorable Albert Lee Stephens, Jr., Senior United States District Judge for the Central

William G. Otis, Washington, D. C., argued, for plaintiff-appellee; Jo-Lynne Lee, Asst. U. S. Atty., San Jose, Cal., on brief.

Before FARRIS and REINHARDT, Circuit Judges, and STEPHENS,* District Judge.

FARRIS, Circuit Judge:

Alfredo Flores appeals his conviction for possessing a firearm as a convicted felon, a violation of 18 U.S.C. App. § 1202(a)(1) (1976).

The firearm was discovered during a search of Flores' apartment for evidence that another convicted felon, Douglas Bontempi, was committing the same crime. Flores' primary contention is that there was insufficient evidence to support the search warrant which sought evidence that Bontempi illegally possessed firearms. Flores also contests the admissibility of a letter in which his attorney admitted Flores' ownership of the gun. We affirm.

I. VALIDITY OF THE SEARCH WARRANT

A. PROBABLE CAUSE FOR THE SEARCH WARRANT

On April 17, 1978 Police Officer Michael Miceli applied to a federal magistrate for a warrant to search an apartment and adjoining storage area located on Luz Avenue in San Jose, California. The search sought evidence that Bontempi illegally possessed firearms, and evidence that would help "establish the identity of persons in control of said premises." Miceli's affidavit in support of the warrant stated that 1) Douglas Bontempi had been convicted of a felony and had been arrested in the apartment on April 3, 1978 on a murder conspiracy charge; 2) Officer Miceli had helped make the arrest; 3) during the arrest, Officer

District of California, sitting by designation.

Miceli had observed in the apartment firearms paraphernalia and "photographs depicting Mr. Bontempi and other individuals holding rifles and other firearms;" 4) Officer Miceli had observed a storage area connected by a door to the back patio of the apartment; 5) the building superintendent had stated he permitted the tenants to use this storage area; 6) an anonymous caller had told the FBI that he and a coworker, while refurbishing the apartment building on April 10, had entered the storage area wherein the co-worker had observed a box of guns; and 7) gunshots were heard in the neighborhood on April 11. The warrant was issued and executed on April 17, 1978. The search revealed several firearms, including a carbine weapon belonging to Flores.

■ To sustain the warrant here, there must be a sufficient relationship connecting the crime, the thing to be seized, and the place to be searched. *See United States v. Bowers*, 534 F.2d 186, 192 (9th Cir.), *cert. denied*, 429 U.S. 942, 97 S.Ct. 360, 50 L.Ed.2d 311 (1976); *United States v. Lucarz*, 430 F.2d 1051, 1055 (9th Cir. 1970).

■ The affidavit contained sufficient evidence to support an inference that weapons might be found in the apartment. In determining whether there is probable cause to support a search warrant "[i]t is only necessary that the affidavit enable the magistrate to conclude that it would be reasonable to seek the evidence in the place indicated by the affidavit." *United States v. Hendershot*, 614 F.2d 648, 654 (9th Cir. 1980). The affidavit stated that during Bontempi's previous arrest in the apartment, Officer Miceli had observed in plain view a significant amount of weapons paraphernalia, including "numerous empty gun holsters, quantities of various caliber ammunition, including ammunition clips from automatic pistols.... gun cleaning equipment [and] a detachable wooden stock from a rifle or automatic weapon." This was corroborated by the informant's statement that his coworker had seen a box of guns in the adjoining storage area which the building superintendent permitted the residents to use.

The question is whether there was a nexus between Bontempi and either the apartment or the weapons. The validity of the warrant does not turn on the existence of probable cause to believe that Bontempi resided at or possessed the apartment. The warrant authorized a search for evidence that Bontempi was in actual or constructive possession of firearms which were believed to be in the apartment. If Bontempi resided at the apartment, there would be a strong inference that firearms found in the apartment were his. But, the affidavit did not state that Bontempi resided at the apartment. The validity of the search warrant turns on whether there were sufficient facts for the magistrate to determine that Bontempi's relationship with the searched apartment was significant enough to justify a belief that at least one of the firearms, if found, belonged to him.

■ Standing alone, a suspect's mere presence or arrest at a residence is too insignificant a connection with that residence to establish that relationship. In *United States v. Bailey*, 458 F.2d 408 (9th Cir. 1972), we found an insufficient relationship between a house to be searched and two bank robbery suspects, because the affidavit stated *only* that one suspect was seen in the house and that the other was arrested there. In the absence of other facts we found no reasonable basis to infer that the house contained any fruits of the robbery.

> No facts are recited from which it could be inferred that [the suspects] were other than casual social guests at the residence.... In short, there is nothing but conjecture to sustain the conclusion that the house contained the objects of the search.

*Id.* at 412. Here, the affidavit contains additional allegations of Bontempi's relationship with the searched apartment. As in *Bailey*, the suspect had previously been arrested at the searched premises. But whereas the *Bailey* affidavit contained no additional information linking the suspect to the residence, the apartment here con-

tained photographs of Bontempi and other persons. The inference, if any, to be drawn from this additional fact was properly for the magistrate.

▇▇▇ The standard of review on appeal from a magistrate's finding of probable cause to support a search warrant is narrow. We review the affidavit as a whole in a common sense and realistic fashion, *United States v. Traylor*, 656 F.2d 1326, 1330 (9th Cir. 1981), and give substantial deference to the magistrate's finding of probable cause, *Aguilar v. Texas*, 378 U.S. 108, 111, 84 S.Ct. 1509, 1512, 12 L.Ed.2d 723· (1964); *United States v. Bowers*, 534 F.2d 186, 188–89 (9th Cir.), *cert. denied*, 429 U.S. 942, 97 S.Ct. 360, 50 L.Ed.2d 311 (1976). In doubtful or marginal cases, preference should be given to the validity of the warrant. *United States v. Ventresca*, 380 U.S. 102, 106, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965). We cannot find, upon this record, that the magistrate erred in issuing the search warrant.

## B. INFORMATION OMITTED FROM THE AFFIDAVIT

Flores challenges the validity of the search warrant on the ground that the affiant intentionally or recklessly omitted from his affidavit the material facts that 1) the apartment superintendent had stated that he considered the storage area to be his, and 2) Bontempi had been in police custody from April 3–17, 1978. Flores argues that the former omission weakens the inference that the guns observed in the storage area were Bontempi's. He argues that the latter omission weakens the inferences that the gunshots heard in the neighborhood were connected to Bontempi or that Bontempi possessed the guns found in the apartment. Flores contends that these facts would vitiate a finding of probable cause to search the apartment, and that the district court erred by not holding an evidentiary hearing

to permit a challenge to the truthfulness of the affidavit.

The Supreme Court has addressed this issue:

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

*Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667 (1978). *See also United States v. Maher*, 645 F.2d 780, 782 (9th Cir. 1981) (omissions).

▇▇▇ Assuming these allegations constitute a sufficient preliminary showing that the affiant deliberately or recklessly omitted certain information from his affidavit, "[e]ven a deliberate falsehood must be material in order to justify invalidating a warrant." *Maher*, 645 F.2d at 782. *See United States v. Lefkowitz*, 618 F.2d 1313, 1317 & n.3 (9th Cir.), *cert. denied*, 449 U.S. 824, 101 S.Ct. 86, 66 L.Ed.2d 27 (1980).[1] We have carefully reviewed the affidavit. The omissions were not material. The affidavit stated that the apartment superintendent had allowed the residents to use "his" storage area. Bontempi's custody on April 17, 1978, when the search warrant was executed, is a

---

1. We have condemned deliberate, misleading omissions in an affidavit filed to support the issuance of a search warrant. A magistrate cannot adequately determine the existence of probable cause with the requisite judicial neutrality and independence if the police provide him or her with a false, misleading, or partial statement of the relevant facts. We do not retreat from this position, but we will not invalidate a search warrant unless the omissions were material.

relevant but not controlling fact concerning his possession of the guns. Possession need not be actual, but can be constructive. *United States v. Kalama*, 549 F.2d 594, 596 (9th Cir. 1976), *cert. denied*, 429 U.S. 1110, 97 S.Ct. 1147, 51 L.Ed.2d 564 (1977); *United States v. LaGue*, 472 F.2d 151, 152 (9th Cir. 1973). Further, Bontempi could have been indicted for possessing firearms prior to his arrest in the apartment on April 3.

Flores failed to establish a basis for an evidentiary hearing to challenge the affidavit's accuracy.

## II. THE ADMISSIBILITY OF THE INCRIMINATING LETTER

### A. THE *SIMMONS* DOCTRINE

Flores next argues that a constitutionally impermissible dilemma was created by permitting the government to introduce into evidence an incriminating letter written by Flores' attorney in an attempt to vindicate Flores' Fourth Amendment rights.

Flores' attorney sent an administrative claim letter[2] to the City of San Jose which alleged that the police had violated Flores' rights by illegally searching his apartment and wrongfully seizing his guns. The letter admitted Flores' possession of the guns and demanded $10,000 in damages. The district court denied Flores' motion to exclude the letter from evidence at his trial for being a convicted felon in possession of firearms.

In *Simmons v. United States*, 390 U.S. 377, 394, 88 S.Ct. 967, 976, 19 L.Ed.2d 1247 (1968), the Supreme Court held that "when

a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial. . . ." The Court found an unconstitutional dilemma because the defendant had been required to surrender his Fifth Amendment privilege against compelled self-incrimination in order to assert his arguably valid Fourth Amendment claim. The Supreme Court has applied a similar rationale to situations in which the government has imposed a Hobson's choice on a person, thereby forcing an election between the Fifth Amendment privilege against compelled self incrimination and another important right. *See, e.g., Lefkowitz v. Cunningham*, 431 U.S. 801, 97 S.Ct. 2132, 53 L.Ed.2d 1 (1977); *Lefkowitz v. Turley*, 414 U.S. 70, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973); *Gardner v. Broderick*, 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968).

Flores argues that *Simmons* should be extended to prevent the admission at his criminal trial of the statements he made in a formal[3] effort to recover damages for an alleged violation of his Fourth Amendment rights.[4] We understand, but reject the argument.

Here, the government did not create the "difficult choice" which Flores complains of. The letter sought monetary damages for an allegedly illegal search of Flores' apartment. It was not necessary to have admitted Flores' possession of the

2. The letter was characterized as an "administrative claim" in *United States v. Flores*, 628 F.2d 521, 523 (9th Cir. 1980).

3. For purposes of this argument, we will treat the letter as though it was the initial step in filing a formal civil complaint. *See* n.2. Any statement made by Flores in a wholly informal or extralegal setting would, of course, be admissible at a criminal trial, subject only to the normal evidentiary rules otherwise applicable. Even incriminating statements made during a prior judicial proceeding are usually admissible as evidence in a subsequent criminal proceeding. *See United States v. White*, 589 F.2d 1283, 1285 (5th Cir. 1979); *United States v. Vecchiarello*, 569 F.2d 656, 664 (D.C.Cir.1977); *United States v. Cecil*, 457 F.2d 1178, 1181 (8th Cir. 1972).

4. In the fourteen years since *Simmons* was decided, no Circuit has ruled on whether a plaintiff's prior statements, made in a formal effort to vindicate his constitutional rights, can be used against him in a subsequent criminal trial. Similar issues were raised, but not decided, in *United States v. Bacall*, 443 F.2d 1050, 1062 (9th Cir.), *cert. denied*, 404 U.S. 1004, 92 S.Ct. 565, 30 L.Ed.2d 557 (1971), and *Doe v. Boyle*, 494 F.2d 1279, 1280 (4th Cir. 1974). This is not surprising, since most defendants probably appreciate the risk of filing an action against the government when the success of that civil proceeding could require incriminating statements which might be admitted as evidence in a later criminal prosecution.

guns found in the apartment at that time and in that manner before seeking to vindicate his Fourth Amendment rights. *Cf. United States v. Dohm*, 597 F.2d 535, 543–44 (5th Cir. 1979) (the court found no compelled self-incrimination, in violation of the Fifth Amendment, because the defendant's admission during his bail hearing that he possessed cocaine was not necessary for the assertion of his Eighth Amendment right to bail). Further, the letter was voluntarily mailed by Flores and his attorney at their election. They knowingly created the complained of dilemma. Nothing dictated their choice of timing. The government was not a party to the election. We find no "intolerable tension between constitutional rights." *See McGautha v. California*, 402 U.S. 183, 211–12, 91 S.Ct. 1454, 1469–1470, 28 L.Ed.2d 711 (1971). Nor can we say that "a constitutional right has been burdened impermissibly...." *See Jenkins v. Anderson*, 447 U.S. 231, 238, 100 S.Ct. 2124, 2129, 65 L.Ed.2d 86 (1980). *See also United States v. White*, 589 F.2d 1283, 1286–87 (5th Cir. 1979).

While different facts might produce a different result, under the circumstances here, it was not error to admit the claim letter into evidence at Flores' trial.

## B. STANDARD OF PROOF ON THE PRELIMINARY ISSUE OF AGENCY

Flores also argues that the letter should not have been admitted because the trial judge applied the substantial evidence standard of proof when determining the preliminary question of whether the letter was an authorized admission under Fed.R.Evid. 801(d)(2)(C) or (D).

Under Fed.R.Evid. 104(a), the judge decides the preliminary question of whether agency existed. Flores contends that the judge erred by requiring the government to show agency only by substantial evidence, rather than by a preponderance of the evidence. We disagree. In the analogous situation involving the admissibility of a coconspirator's statements, we require substantial independent evidence of the existence of the conspiracy. *See United States v. Zemek*, 634 F.2d 1159, 1170 (9th Cir. 1980), *cert. denied*, 450 U.S. 916, 101 S.Ct. 1359, 67 L.Ed.2d 341 (1981). While some other circuits apply the preponderance of the evidence test to preliminary questions of fact, *see, e.g., United States v. Santiago*, 582 F.2d 1128, 1134–35 (7th Cir. 1978), the Ninth Circuit requirement is satisfied by substantial evidence of the existence of the preliminary fact of agency.

Flores' other arguments are without merit.

AFFIRMED.

REINHARDT, Circuit Judge, dissenting.

I believe that *United States v. Bailey*, 458 F.2d 408 (9th Cir. 1972), compels the conclusion that Officer Miceli's affidavit was insufficient to support issuance of a search warrant. Therefore, I respectfully dissent.

Flores argues *inter alia* that the search warrant was invalid because the affidavit supporting it did not state facts sufficient to show that Bontempi was in possession of firearms to be found at the apartment. Specifically, he contends that the affidavit did not recite facts which showed that Bontempi resided at the specified address. The government asserts that Bontempi's prior arrest in the apartment and the photographs displayed there were sufficient to link him with the apartment.

We have previously held that recitation of the fact that an individual has been arrested at a residence is insufficient to support the issuance of a warrant to search that residence for items believed to be in the arrested individual's possession. *United States v. Bailey*, 458 F.2d 408, 412 (9th Cir. 1972). In *Bailey*, we stated:

> The affidavit simply discloses that Bailey had been seen at the house and that Cochran was arrested there. No facts are recited from which it could be inferred that Bailey and Cochran were other than casual social guests at the residence.... In short, there is nothing but conjecture to sustain the conclusion that the house contained the objects of the search.

Under *Bailey*, the statement in Officer Miceli's affidavit that Bontempi had previously been arrested at the Luz Avenue apartment permits no greater inference than that he was a "social guest" or a friend of persons who were using the apartment. Consequently, that statement is insufficient to support issuance of the search warrant.

As the majority acknowledges, the only difference between *Bailey* and the case before us is that the instant affidavit showed that "the apartment here contained photographs of Bontempi and other persons." Without further analysis the majority then concludes, rather peremptorily, "[t]he inference, if any, to be drawn from this additional fact is for the magistrate." The facts in every case differ somewhat. Nevertheless, an important judicial function is to determine what legal significance, if any, may be attached to the particular distinctions. In this case, an examination of the affidavit demonstrates that there is none.

The vague sentence in the affidavit regarding photographs depicting Bontempi and other individuals is vague and ambiguous at best and can not serve to provide the additional facts, required by *Bailey*, to support a conclusion that Bontempi was in possession of the apartment. It would be the rankest conjecture to infer from that sentence that one of a number of persons depicted in a photograph or photographs in the apartment has any particular interest in the apartment.[1]

Nor can any inference that the firearms paraphernalia observed at the apartment belonged to Bontempi be drawn from the fact that the photograph(s) showed Bontempi as well as an unspecified number of other persons holding rifles or other firearms. It is difficult to imagine how the fact that a number of unidentified persons were once pictured holding rifles under circumstances which may well have been entirely lawful gives rise to any inference that one of those individuals is the owner of specific paraphernalia which it would be unlawful for him to own but which it would be lawful for his friends or associates to possess.[2] In fact, the photographs support the inference that the paraphernalia was the type which would be maintained by the occupants of the apartment whoever they may have been.

In short, the affidavit is wholly insufficient to permit any reasonable inference that Bontempi possessed firearms which could be found in the apartment. Under *Bailey*, the district court was required to grant Flores' motion to suppress.

The firearms which the search produced were central to Flores' conviction. Conse-

1. I do not suggest that photographs in an apartment cannot, under other circumstances, tend to show who the persons using the apartment are. However, substantially more information as to the photographs than was set forth in Miceli's affidavit would be necessary. The affidavit does not tell us, for example, if Mr. Bontempi appeared in more than one photograph, whether the photograph or photographs in which he appeared depicted him alone or as part of a group, and, if the latter, whether the group was large or small. The information regarding Mr. Bontempi's appearance in a photograph or photographs is too sparse to permit *any* inference regarding his connection with the apartment. I note that the affidavit in this case was generally full and complete and that the information contained therein is set forth in a competent and professional manner. It is not likely that additional material information regarding the photographs existed but was omitted due to oversight or inexperience. Rather, it is likely that the affidavit carefully sets forth all that can be said about the photographs. More-

over, a careful reading of the affidavit suggests strongly that the information as to the photographs was included not for the purpose of showing that Bontempi had any particular connection with the apartment but in order to bolster the contention that weapons would be found there. The sentence regarding the photograph of individuals, including Bontempi, with weapons appears in the middle of a listing of the ammunition and weapon parts found in the apartment.

2. There is no indication or suggestion that the photograph or photographs were taken after Bontempi's felony conviction. In fact, the affidavit states that on the day of his arrest Bontempi was on probation following a conviction for attempted auto theft. I presume therefore that his conviction was not of ancient vintage. The magistrate had no way of knowing, on the other hand, whether or not the photograph or photographs were.

quently, the error in admitting the items seized was not harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967); *United States v. Valle-Valdez,* 554 F.2d 911, 915–16 (9th Cir. 1977). In view of this conclusion, I would not reach the other issues raised by Flores.

For the foregoing reasons, I would reverse the judgment of conviction.