## GRUDIN v. UNITED STATES.
### No. 13188.

United States Court of Appeals
Ninth Circuit.

Aug. 18, 1952.

Maynard J. Omerberg, Los Angeles, Cal., for appellant.

Louis Licht, A. L. Wirin, Fred Okrand, amicus curiae, Los Angeles, Cal., for Civil Liberties Union, Southern Cal.

Walter S. Binns, U. S. Atty., Ray H. Kinnison, Asst. U. S. Atty., Chief of Criminal Division, Jack E. Hildreth, Max F. Deutz, Asst. U. S. Attys., all of Los Angeles, Cal., for appellee.

Before DENMAN, Chief Judge, and STEPHENS and ORR, Circuit Judges.

DENMAN, Chief Judge.

Grudin appeals from four orders of the district court committing him for contempt in refusing to answer four questions put to him as a witness before the district judge and the grand jury, sitting together in a grand jury investigation. From the questions asked Grudin before the grand jury

prior to the hearing before both the grand jury and the court, it could be inferred the crime being investigated was some violation of the espionage acts in which a number of persons were engaged. Grudin was asked if he knew a number of persons and said he knew some of them and refused on the ground of possible incrimination to answer to the others. Later, when the matter was before both judge and jury, it was for the first time revealed to Grudin by the government that the transaction in connection with the transfer of title of an automobile was between Grudin and one Goodman and not, as it appeared, between Grudin and a secondhand car dealer, one McCarter.

Grudin had testified in the hearing before the grand jury alone that he had mailed the following letter dated January 28, 1946, marked Exhibit 11, to one Roy C. McCarter:

> "Morris Grudin
> 358 S. Doheny Dr.
> Beverly Hills, Calif.
> Jan. 28, 1946

> "Roy C. McCarter
> Used Cars—Insurance
> 415 Fifth St.
> Santa Rosa, Calif.
> "My dear Mr. McCarter:
> "As per our written agreement of Jan. 21, 1946 I am enclosing the pink and white slips you asked for re the 1933 Studebaker Registration no. 9H2793.
> "I shall expect your check of $100.00 as culminating your part of the agreement.
> "Sincerely yours,
> "/s/ Morris Grudin."

It is apparent that there is no admission of any act criminal or tending to be criminal in character in sending such a letter. It could have that character only by Grudin's knowledge at the time that the car or the $100. was to be used for a criminal purpose. There is no such evidence from Grudin. Hence the writing of such a non-incriminating letter is not a waiver of immunity from answering incriminating questions of later transactions concerning the automobile or the sending of the pink

and white slips or the expectancy of the $100. check. We think the district court erred in holding Grudin had made such a waiver.

The case has no resemblance to United States v. St. Pierre, 2 Cir., 132 F.2d 837, 147 A.L.R. 240, where the witness had admitted he was an embezzler and had transported the embezzled matter across a state line; nor to Buckeye Powder Co. v. Hazard Powder Co., D.C., 205 F. 827, 829, where an admission in a letter in evidence disclosed he had published a criminal libel in a newspaper was held a waiver of the right to refuse to produce other documents concerning the libel. Nor is it like Rogers v. United States, 340 U.S. 367, 373, 71 S.Ct. 438, 95 L.Ed. 344, where the witness had voluntarily given evidence of criminating facts.

Here where Grudin's letter of January 28 gave no fact whatsoever of a criminal character, there is not even the occasion to invoke the doctrine of Smith v. United States, 337 U.S. 137, 150, 69 S.Ct. 1000, 1007, 93 L.Ed. 1264, that "waiver of constitutional rights, however, [here to immunity of self conviction] is not lightly to be inferred." The mere statement of the prosecuting attorney or the court cannot make a nonwaiving statement a waiver.

The subsequent questions which Grudin refused to answer on the ground that the answers would tend to incriminate were put to him after the government revealed to Grudin that it contended that Grudin's above described letter of January 28, 1946, was not to McCarter, but was an incriminating part of a concealed correspondence with one Morris Goodman. Hence the subsequent refusals to answer should be determined with a view to this newly-disclosed menace. These questions concern matters occurring at least eleven days after the admitted letter of January 28, 1946, during which time Grudin well could have learned that Goodman was engaged in violating the espionage laws and that the $100. check was to come from him.

Grudin refused to answer, on the ground of incrimination or tending to incriminate, a question put to him concerning an un-

signed letter dated February 6, 1946, in a photostat thereof marked Exhibit 12, reading:

"February 6, 1946.

"Mr. Morris Gruden,
358 S. Doheny Drive,
Beverly Hills, Calif.
"Re: 34 Stude 6 4Dr Sedan
Lic. #9H2793,
Mot. #D1836

"Dear Sir:

"Enclosed please find my check in the sum of one hundred ($100.00) dollars payment in full for the above captioned automobile as per our agreement of January 21st, 1946.

"Very truly yours,"

The question put is:

"I show you a photostatic copy of what purports to be a letter, on which I have placed the numerals 12, [166] and my initials, and ask you to examine this document and tell this body whether or not you have ever seen the original of that document?"

He also refused on the same ground to answer two questions concerning Exhibit No. 10, a photostatic copy of a check, reading:

"[Check]
Roy C. McCarter
Used Cars
415 Fifth Street   Phone 1427
No. 1218
Santa Rosa, California, Feb. 6th, 1946
Pay to the
Order of Morris Grudin.. $100.00
One Hundred & no/100...... Dollars
Santa Rosa Office 90–196
American Trust Company
Head Office San Francisco
Santa Rosa, California
In full 34 Stude 6 Sedan
/s/  Nina Gale McCarter.
[Stamped]:  Paid 2–11–46
30–2
16–11
[Back of Check]
[Initialed]:  J. E. H. 10
[Endorsed]  /s/  Morris Grudin"

One question was "Where did you get that document?"; the other being "Did you or did you not cash that check?"

■ In adjudging Grudin guilty of criminal contempt for not answering these three questions, the court held that they were incriminating, stating "that although each of said questions is incriminating to the defendant, the claim of privilege by Morris Grudin is not proper or justified because of prior waiver of said privilege by Morris Grudin; * * *" They quite well could be incriminating because if Grudin had learned in the ten days after January 28, 1946, that Goodman was engaged in the actual commission of a felony in violating the espionage act and did not as soon as possible make it known to some judge or other person in civil or military authority, he was guilty of the crime of misprision of felony. 18 U.S.C. § 4.

Since Grudin had not waived his right to immunity we reverse the judgments of contempt for Grudin's refusal to answer these three admittedly incriminating questions.

[5] There was a fourth judgment for such a refusal to answer a question concerning an exhibit which the prosecuting attorney described as "a photostatic copy of what purports to be a letter, on which I have placed the numerals 13." [Tr. 197]. The question reads:

"I show you Grand Jury Exhibit No. 13, Mr. Grudin. From whom did you receive that exhibit?"

The answer to the question could be of no aid to the criminal investigation, even if we were not bound to the rule of strict construction in favor of the witness. It is obvious that Grudin had received the photostatic copy from the prosecuting attorney. What the prosecutor failed to do was to ask regarding the letter photostated in the exhibit as he did with regard to the letter of the photostatic Exhibit 12, supra.

The judgment is reversed as to the conviction with reference to the question on Exhibit 13.

The judgments are reversed.