**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Alfredo FLORES, Defendant.**

**In the Matter of Robert L. THORP,**
**Witness-Appellant.**

**No. 80–4242.**

United States Court of Appeals,
Ninth Circuit.

Submitted July 21, 1980.

Decided Aug. 12, 1980.

As Modified on Denial of Rehearing
and Rehearing En Banc Oct. 9, 1980.

Claudia Wilken, Oakland, Cal., on brief, for witness-appellant.

Jo-Lynne Lee, Asst. U. S. Atty., San Francisco, Cal., on brief, for plaintiff-appellee.

Before SNEED, ANDERSON and TANG, Circuit Judges.

SNEED, Circuit Judge:

Appellant, an attorney, appeals from an order of the district court committing him as a recalcitrant witness, pursuant to 28 U.S.C. § 1826, for his willful disobedience of an order of the court to answer certain questions during a pretrial hearing in the matter of *United States v. Alfredo Flores*, C.R. No. 79–320 SW. Appellant is at liberty on his own recognizance pending this appeal. We affirm.

## I.

### Facts

In 1978 appellant was employed with a law office that was consulted by a group of people, many of whom were members or associates of the Hell's Angels Motorcycle Club, about filing of a large, joint civil rights action. After interviewing approximately seventy clients and potential plaintiffs, appellant prepared approximately fifteen administrative claims, one of which was for an Alfredo Jiminez Flores and which is set forth in full in the margin.[1] In this claim Flores alleged that his residence had been searched and property, including a firearm, was seized. In due course, the contemplated civil rights action was filed by an attorney not associated with the appellant or the law office in which he worked.[2] An Alfredo Flores is a named plaintiff, although the attorney who filed the action has stated in his affidavit that Flores did not authorize him to file the action on behalf of Flores.

On September 12, 1979, Flores was indicted for a violation of 18 U.S.C.App. § 1202 (felon in possession of a firearm). The government seeks to introduce the administrative claim filed by the appellant on behalf of an Alfredo Flores to show that the accused Flores possessed a firearm. Prior to trial Flores filed a motion-in-limine to exclude the civil claim, *inter alia*, as hearsay. On April 16, 1980, appellant was called to take the stand by the government to establish a foundation for admission of the claim as an authorized statement of an agent of Flores. Rule 801(d)(2)(C) and (D), Fed.R.Evid. The pertinent portion of the

---

1. ALFREDO JIMINEZ FLORES, hereby makes claim against the City of San Jose, and the County of Solano, State of California, for the sum of TEN THOUSAND ($10,000.00) DOLLARS and makes the following statement in support of said claim:

    1. Claimant's post office address is 2187 Luz Avenue, San Jose, California.

    2. Notices concerning the claim should be sent to Robert L. Thorp, Attorney at Law, Law Offices of Joseph Rhine, 2424 Pine Street, San Francisco, California 94115.

    3. The date and place of the occurrence giving rise to this claim is: April 17, 1978 at 2187 Luz Avenue, San Jose, California.

    4. The circumstances giving rise to this claim are as follows:

    On April 17, 1978, at approximately 8:30 P.M., members of the San Jose Police Department, together with a member of the Solano County Narcotics Task Force entered the residence of plaintiff purportedly to execute a search warrant directed to possession of Douglas Bontempi. Claimant was absent from his residence at the time, but upon returning thereto he discovered that the house had been raided, all of his possessions had been removed from the drawers or storage areas where they were kept and were dumped on the floor, and that the following items of his property had been seized: a 30 caliber carbine, two 12 gage shotguns, a 22 caliber rifle, and a 44 caliber marlin rifle. Claimant has never been served with a copy of the warrant, a copy of the inventory of the materials seized, nor any charged lodged against him. [sic]

    This document is set forth in a motion in limine by Alfredo Jiminez Flores, Criminal No. 79–320–SW (SJ), Appellant's Excerpt of Record, 8.

2. It was filed on January 16, 1979, and is styled *Hell's Angels Motorcycle Club, et al. v. City of Oakland, et al.*

transcript of this effort by the government is set forth in the margin.[3] The critical questions asked by the court are as follows:

"Was that [the information in the claim] given to you by the client, that information?

"Did the person named Flores give that to you?"

"In this case, was it obtained from another source?"

"Was the other source a client?"

As the transcript reveals, appellant refused to answer on the ground that the attorney-client privilege required his silence.

The court ordered appellant to respond to the questions. Following his refusal to answer, the court recessed to give the appellant an opportunity to obtain counsel and the matter was set for a hearing to show cause on contempt. On April 25, 1980, appellant moved to dismiss the contempt charge and submitted an affidavit, the per-

3. Ms. Lee: Let me read the paragraph that is stated in the claim and ask you whether or not that particular paragraph, the information contained in that particular paragraph, was authorized by Mr. Flores to be made by you in this claim.

"On April 17, 1978, at approximately 8:30 p.m., members of the San Jose Police Department, together with a member of the Solano County Narcotics Task Force, entered the residence of plaintiff, purportedly to execute a search warrant directed to possession of Douglas Bontempi. Claimant was absent from his residence at the time, but upon returning thereto, he discovered the house had been raided, all of his possessions had been removed from the drawers or storage areas where they were kept, and were dumped on the floor and that the following items of his property had been seized: A .30-caliber carbine, two .12-gauge shotguns, a .44 caliber Marlin rifle."

Mr. Cook: Your honor, perhaps it would be appropriate if the witness could see the document that was read from.

Ms. Lee: Let the record reflect that the witness has been given a certified copy of the claim.

The Witness: I am sorry, Counsel.

Ms. Lee: Q. The question is whether or not that specific information—

The Court: Two questions. Was that given to you by the client, that information?

The Witness: Your honor, I would have to, with all respect, say that that information, as to who gave it to me, would fall under the attorney-client privilege.

The Court: Did the person named Flores give that to you?

The Witness: I am sorry. Again, with all respect—

The Court: Your objection is overruled, Counsel.

The Witness: Sir, again with all respect, I would respectfully decline—

The Court: You testified that the client came in and asked you to prepare a claim.

The Witness: I have not testified to that, that Mr. Flores asked me to.

The Court: Normal procedure is that the client comes in and asks you to prepare a claim, you get the information from the client, you put it in the claim, basically, you don't manufacture out of your own head, and you file the claim with the City.

Isn't that your procedure?

The Witness: Yes, sir. That is my normal procedure.

The Court: In this particular claim, you signed it?

The Witness: Yes sir.

The Court: And a client gave you the information that went into that claim?

The Witness: I am sorry. That does not follow.

The Court: Why not?

The Witness: Well, sir, to discuss this as a—in the abstract, sir, the information could have been obtained from other sources rather than from the client himself.

The Court: In this case, was it obtained from another source?

The Witness: Your honor, again with all respect to the Court and to the Court's earlier ruling, I must decline to answer that question I believe that's privileged information.

The Court: Was the other source a client? You are claiming you obtained it from a source who was also a client?

The Witness: Your honor, I haven't made any claim as to the source at all.

The Court: I am asking you now. I am asking you now to answer the question.

The Witness: Yes sir. As to whether the information was from another source?

The Court: Yes.

The Witness: Again, sir, with all respect, I do believe that would be asking me to breach the privilege, the attorney-client privilege of communication.

The Court: I disagree and order you to answer the question.

The Witness: Sir, with the greatest respect for the Court and the Court's opinion, I would respectfully decline to answer the question.

The Court: I am going to set this for hearing this afternoon on contempt. You have been directed to answer the question, because the privilege does not apply.

tinent portions of which we set forth in the margin.[4] In substance, appellant's affidavit states that the information set forth in the claim he filed on behalf of Alfredo Flores came from "more than one client," including, but not limited to, clients X and Y. The affidavit leaves open the question whether any information came from appellant's client Alfredo Flores.

On May 15, 1980, at the show cause hearing, appellant's affidavit was presented and no further information was divulged. The court adjudged appellant in civil contempt under 28 U.S.C. § 1826 and ordered that appellant be committed to the custody of the U. S. Marshal until he obeys the order to testify or the expiration of the matter of *United States v. Alfredo Jiminez Flores*, and in any event no longer than eighteen months. Appellant was released on his own recognizance pending appeal of the contempt judgment. This appeal was timely filed.

Appellant does not argue that his April, 1980 affidavit was adequately responsive to the questions asked. Nor could he do so. He has neither acknowledged that any information in the claim was supplied by his client Flores nor has he denied that Flores supplied some of the information. In addition, he has not stated that he does not remember whether Flores supplied any information. It follows that appellant's success on this appeal depends upon the force of other contentions. Appellant advances three such contentions. First, he insists that his failure to respond completely is justified by the attorney-client privilege. Next he contends that the questions and desired answers have for reasons set forth

---

4. 5. On April 16, 1980 I was called as a witness by the government to testify at a motion in limine in the case of *United States v. Flores* in this court. I declined to answer the following questions, based upon my belief that to answer them would constitute a violation of the attorney-client privilege:

1. Was that given to you by the client, that information?

2. Did the person named Flores give it to you?

3. In this case, was it obtained from another source?

4. As to whether the information was from another source?

6. Upon reflection and consultation with counsel I have seen that I was in error, although in good faith, in completely declining to answer questions 3 and 4 above. I believe that consistently with the attorney-client privilege I can make the following answer to questions 3 and 4: The sources of the information in question were more than one client. By "client" (here and throughout this Declaration) I mean a person who came to me, in my professional capacity as an attorney, desiring legal advice.

7. I offer my apologies to the Court for not making the above answer to those questions at the time of the hearing. The reason I did not was that I feared, in good faith, that such answer would be deemed a waiver of the privilege as to further inquiries into the identities of the sources and the substance of the communications. I now do not believe that this answer is such a waiver and do not intend it to be. I do apologize to the Court.

8. At the time of the filing of the claim in question, I was employed, as I stated above, by the Law Offices of Joseph Rhine. That office was being consulted by a large number of persons, many of whom were members or associates of the Hell's Angels Motorcycle Club, regarding the possible filing of a large, joint, civil rights lawsuit. In the course of my employment I personally interviewed approximately 70 clients and potential plaintiffs.

9. These consultations were made on the following basis: The individuals came to me seeking legal advice from me in my capacity as an attorney; they made communications to me relating to that purpose, in confidence; none of them have informed me that they wished to waive the attorney-client privilege.

10. I also filed approximately 15 related administrative claims. Ultimately, the Law Offices of Joseph Rhine did not file the contemplated lawsuit.

11. As I have testified, I did have a meeting with an individual introduced to me as ALFREDO FLORES. I cannot identify the defendant in this case as the ALFREDO FLORES I met.

12. Prior to my meeting with the man I knew as ALFREDO FLORES, I met with another client whom I shall refer to as X. X consulted me on the basis described in Paragraph 9 above, and among other things, we discussed certain matters related to ALFREDO FLORES.

13. At my meeting with ALFREDO FLORES, X was also present. The consultation was on the basis described in Paragraph 9 above.

14. After my meeting with ALFREDO FLORES and X, I met with another client whom I shall refer to as Y. My consultation with Y was on the basis described in Paragraph 9 above. Among other things, we discussed certain matters related to ALFREDO FLORES.

later ceased to be relevant to the criminal proceeding against Flores, and finally, he asserts that contempt is improper because he presently is unable to comply with the district court's order to testify and, in any event, the sentence was excessive under the circumstances. We reject each of these contentions and affirm the judgment of contempt and the sentence imposed.

## II.

### THE ATTORNEY–CLIENT PRIVILEGE

■ Our decisions make clear the elements necessary to the successful invocation of the attorney-client privilege and the locus of the burden of proof with respect to the application of the privilege to specific facts. *See Matter of Fischel*, 557 F.2d 209, 211 (9th Cir. 1977) (elements of privilege); *United States v. Landof*, 591 F.2d 36, 38 (9th Cir. 1978) (burden of proof). These authorities establish that the appellant must show that he is being ordered to disclose communications obtained from a client during the course of the client's search for legal advice from the appellant in his capacity as a lawyer which were made in confidence by the client to the appellant, and that the privilege with respect to these communications has not been waived.

■ Responsive answers to the questions put by the court would not be within the attorney-client privilege. Appellant's failure to carry his burden is attributable to the fact that the circumstances set forth in the administrative claims obviously were not intended to remain confidential and to the long established proposition that the identity of the client is not a confidential communication. *In re Michaelson*, 511 F.2d 882, 887–89 (9th Cir.), *cert. denied*, 421 U.S. 978, 95 S.Ct. 1979, 44 L.Ed.2d 469 (1975). Nor does there appear to exist any reason why the authority of an attorney to file a claim on behalf of a client cannot be ascertained by the type of questions asked by the court in this case. Obviously it cannot be seriously urged that, because of the privilege the existence of authority on the part of an attorney to file a public document on behalf of a client cannot be required to be revealed. The questions asked by the court sought no more than an affirmation or denial, as the case may be, of that authority.

■ It by no means follows, however, that an inquiry concerning authority to file a public document can be employed as a device to pierce the privilege. Thus, an attorney's affirmation or denial cannot be tested by cross-examination regarding the confidential communications to him by his client that led him to conclude that authority did, or did not, exist. *Compare Chirac v. Reinicker*, 24 U.S. (11 Wheat) 280, 6 L.Ed. 474 (1826). The court's questions in this case do not invade that territory, however.

Appellant, reasoning by analogy, argues that the exception to the general rule that the identity of the client is not privileged, which was employed by this court in *Baird v. Koerner*, 279 F.2d 623, 630 (9th Cir. 1960), is applicable here. Specifically, he points out that *Baird* held that, when disclosure of the identity of the client creates a strong probability that the client will be implicated in the very criminal activity for which legal advice was sought, the privilege may be invoked to avoid disclosure of the client's identity. To reveal whether Flores authorized the filing of the claim, appellant argues, will implicate Flores in criminal activity and thus should be within the privilege.

We hold that the *Baird* exception is not applicable to this case. In the first place, the consultation by Flores was not with respect to criminal activity. Its purpose was to file a civil claim against the City of San Jose. Second, under the facts as they exist on this record, it is by no means clear that appellant's answer would implicate Flores in any manner. It must be remembered that it is possible that clients X and Y, not Flores, authorized the filing of the claim. Finally, at worst the claim is only circumstantial evidence that the Alfredo Flores charged in *United States v. Alfredo Flores*, C.R. No. 79–320 SW is the same Alfredo Flores named in the administrative claim.

## III.

### RELEVANCE OF QUESTIONS

[5, 6] Appellant also argues that the district court's judgment of contempt and sentence is invalid because the questions no longer are relevant to the government's proceeding against Alfredo Flores. Lack of relevance is predicated upon the district court's ruling that the claim filed by the appellant is admissible notwithstanding appellant's refusal to answer the questions with which we are concerned. It is true that refusal to answer a question which is of no assistance to the interrogator does not constitute a material obstruction of justice. *Grudin v. United States*, 198 F.2d 610 (9th Cir. 1952). In this case, however, the appellant's response to the questions posed by the government would either strengthen or weaken its case against Alfredo Flores because, if authorized, the administrative claim becomes an authorized admission within the meaning of Rule 801(d)(2)(C) and (D), Fed.R.Evid., and far more damaging to Alfredo Flores than would be an unauthorized claim admitted merely as circumstantial evidence of a connection between Flores and the claim. Evidence is relevant when it tends to make any fact of consequence more or less probable, as the case may be, than it would be without the evidence. Rule 401, Fed.R.Evid. It follows, therefore, that the questions posed to the appellant sought relevant evidence.

## IV.

### ABILITY OF APPELLANT TO COMPLY WITH COURT'S ORDER AND LEGALITY OF SENTENCE

■ Building on his argument pertaining to relevance, appellant insists that because the district court has determined that the claim is admissible the proceeding in which he refused to answer has terminated. Its termination renders it impossible to respond in that proceeding and this impossibility extinguishes his contempt. *See Maggio v. Zeitz*, 333 U.S. 56, 76, 68 S.Ct. 401, 411, 92 L.Ed. 476 (1948); *Shillitani v. United States*, 384 U.S. 364, 371, 86 S.Ct. 1531, 1536, 16 L.Ed.2d 622 (1966).

We would agree with the appellant were his minor premise (*viz.*, that the proceeding out of which appellant's contempt sprang has terminated) a correct statement of the facts. We hold that it is not. The proceeding against Alfredo Flores has not been concluded, and it remains relevant whether the claim was authorized. It is not necessary for us to determine at what point the proceedings in which appellant refused to obey the district court's order will terminate. It is enough to hold that the district court's decision to admit the claim in the motion-in-limine hearing and the conclusion of that hearing did not terminate the proceedings in which appellant refused to obey a proper order of the district court.

■ Finally, appellant argues that because of his lack of experience in the practice of law, his meager resources, and the necessity to support his family, his sentence should be reduced to a small fine or conditional volunteer work. Any more severe sanction exceeds that "minimally necessary" to obtain compliance, the appellant argues.

■ We acknowledge that the district court "should apply the least coercive sanction (e. g., a monetary penalty) reasonably calculated to win compliance with its orders." *Matter of Grand Jury Impanelled January 21, 1975 (Freedman)*, 529 F.2d 543, 551 (3d Cir.), *cert. denied*, 425 U.S. 992, 96 S.Ct. 2203, 48 L.Ed.2d 816 (1976). However, it is also true that we defer considerably to the judgment of the district court in fashioning the appropriate sentence because of its proximity to the events out of which the contempt springs. Its judgment will be disturbed only if it has abused its discretion. *United States v. Asay*, 614 F.2d 655, 660 (9th Cir. 1980); *Shibley v. United States*, 236 F.2d 238 (9th Cir.), *cert. denied*, 352 U.S. 873, 77 S.Ct. 98, 1 L.Ed.2d 125 (1956). We find no abuse of discretion here. The district court could reasonably conclude that only the sentence imposed could reasonably be expected to secure compliance.

Affirmed.