In re **SPECIAL GRAND JURY PROCEEDINGS—SUBPOENA SERVED ON GOODMAN & CHESNOFF.**

**No. CV–S–94–312–PMP (LRL).**

United States District Court,
D. Nevada.

Dec. 1, 1994.

Jane Hawkins Shoemaker, Asst. U.S. Atty., Las Vegas, NV, for plaintiff.

David Chesnoff, Goodman & Chesnoff, Las Vegas, NV, for defendant.

## ORDER

PRO, District Judge.

### I. PROCEDURAL HISTORY

On December 6, 1993, the law firm of Goodman & Chesnoff was served with a subpoena issued by the Special Grand Jury for the District of Nevada for fee information relating to Goodman and Chesnoff's representation of Natale Richichi, Nancy Alba, Gustave Alba, Carmello Richichi, and Carol Resnick from February 1, 1993, to present.[1] Thereafter, on March 22, 1994, Oscar B. Goodman, Esq., appeared before the Grand Jury as the custodian of records for the firm. Mr. Goodman testified that his law firm had no records called for by the Grand Jury subpoena relating to any of the named individuals except Natale Richichi. Mr. Goodman did agree to provide the Grand Jury with certain records, but refused to produce fee records pertaining to his representation of Natale Richichi or to specify which type of records existed, asserting that compliance with the subpoena would violate the rights guaranteed under the Sixth and Eighth Amendments to the Constitution of the United States.

On March 28, 1994, the Government filed a Motion for Order to Show Cause (# 1) seeking to compel Goodman's compliance with the

---

**1.** Specifically, the subpoena commanded the Goodman firm to produce the following:

Any and all records of any form of payment received and/or promised for legal representation of: Natale Richichi, Nancy Alba, Gustave Alba, Carmello Richichi, and Carol Resnick from 1 February 1993, to present. These records should include, but are not limited to: retainer agreements; all billings; the date(s), amount(s), and means of all payments received; the identity of the person(s) or entities making the payments; and copies of all checks, money orders, and/or cashier's checks used to make the payments.

See Subpoena to Testify Before Grand Jury, attached as Exhibit "A" to the Government's Motion for Order to Show Cause (# 1).

subpoena. After the Motion was fully briefed and oral argument was heard, this Court issued an Order (# 11) granting the Government's Motion for Order to Show Cause, overruling the Sixth and Eighth Amendment claims of privilege asserted by Goodman & Chesnoff, and ordering Goodman & Chesnoff to forthwith comply with the Grand Jury subpoena. *See* Order (# 11), at 6.

On May 3, 1994, Mr. Goodman reappeared before the Grand Jury as custodian of records for his law firm, and again refused to produce the subpoenaed records. As a result, the Government moved that Goodman be held in contempt under 28 U.S.C. § 1826(a). During a hearing held on May 13, 1994, pursuant to the provisions of § 1826(a), the Court found Mr. Goodman in contempt for failing to comply with the Grand Jury Subpoena Duces Tecum and this Court's Order of April 26, 1994 (# 11). *See* Minute Order (# 15). The Court also ordered that Goodman be taken into custody pending compliance with the Grand Jury subpoena. On motion of the Government, however, the Court stayed its Order of incarceration pending Goodman's expedited appeal to the Ninth Circuit Court of Appeals pursuant to 28 U.S.C. § 1826(b).

In an Order and Opinion filed on August 17, 1994, the Ninth Circuit affirmed this Court's judgment of contempt against Mr. Goodman for his refusal to comply with the subpoena of the Grand Jury. *See In re Grand Jury Proceedings, Goodman v. United States,* 33 F.3d 1060 (9th Cir.1994) (per curiam). Mr. Goodman appealed to the United States Supreme Court, but his petition for writ of certiorari was denied on October 3, 1994.

Presently before the Court is the Government's Motion for Continued Proceedings Re: Order of Contempt (# 32) filed on October 17, 1994. Goodman filed a Response (# 37) on November 7, 1994, and the Government filed its Reply (# 38) on November 14, 1994. On November 18, 1994, Goodman filed a Response to the Government's Reply

(# 41). The Court heard oral argument on the Government's Motion on November 23, 1994.

At the hearing conducted November 23, 1994, counsel for Mr. Goodman advised that Mr. Goodman was now prepared to submit the fee records which are the object of the Grand Jury subpoena to the Court for *in camera* review together with a Declaration explaining the grounds for his further objection to production of the fee records before the Grand Jury. On November 28, 1994, Mr. Goodman submitted the fee records at issue together with a Declaration to the Court for its *in camera* review (# 48). Additionally, on November 28, 1994, the Government filed under seal with the Court, and served upon Mr. Goodman, an additional Declaration (# 47) setting forth what the Government contends is a basis to find that imposition of a coercive monetary sanction or incarceration is likely to induce Mr. Goodman to comply with the Grand Jury subpoena (# 47). On November 30, 1994, Goodman filed under seal a Reply to Government's Response to Motions to Quash Grand Jury Subpoena served on Third Party Filed by Intervenors, (# 51),[2] a Declaration of Oscar B. Goodman, and a Reply to Government Declaration (# 50), as well as a further *in camera* submission (# 49).

When this Court held Mr. Goodman in contempt on April 26, 1994, it was with the clear understanding of all involved that Mr. Goodman would have the opportunity to challenge this Court's Order before the Ninth Circuit Court of Appeals, and if necessary, before the United States Supreme Court. That is precisely why this Court granted the Government's request to stay the Order of Contempt and incarceration as to Mr. Goodman pending appeal. Those appeals are now exhausted and the law of this case is settled.

On appeal, the Ninth Circuit, as had this Court, rejected Mr. Goodman's claim that the Grand Jury subpoena violated his rights under the Eighth Amendment, finding Goodman's claim "speculative and premature." The Ninth Circuit noted that Mr. Goodman's

**2.** The Reply to Government's Response to Motions to Quash Grand Jury Subpoena served on Third Party filed by Intervenors (# 51) relates to

a separate Motion to Intervene filed on behalf of Salvatore Richichi, which this Court has previously denied.

compliance with the Grand Jury subpoena would not constitute a waiver of his Eighth Amendment claim against the imposition of excessive fines if such fines were imposed in the future as a result of his compliance with the Grand Jury subpoena. 33 F.3d at 1062. The Ninth Circuit also rejected Goodman's Sixth Amendment right to counsel claim on behalf of his client, Natale Richichi, as "premature and speculative." *Id.* at 1063. Finally, the Ninth Circuit rejected Goodman's claim that compliance with the Grand Jury subpoena would interfere with the attorney-client privilege between Goodman and Natale Richichi. *Id.*

Mr. Goodman has exhausted his appeal of this Court's finding of contempt before the Ninth Court of Appeals, and the United States Supreme Court has denied review. Therefore, the law in this case is clear, and absent some alternative ground to justify refusal to do so, Mr. Goodman's compliance with the Grand Jury subpoena, however distasteful it may be for him, is now mandated.

By its Motion for Continued Proceedings Re: Order of Contempt (# 32), the Government seeks to enforce the Court's Order of Contempt against Mr. Goodman for his failure to produce the subpoenaed fee records in accordance with the Grand Jury subpoena. In his response, Mr. Goodman contends that the Grand Jury subpoena served on his firm should be quashed because its use constitutes an abuse of the grand jury process. Mr. Goodman further contends the subpoena should be quashed as an appropriate sanction for other instances of alleged Government misconduct. Finally, Mr. Goodman renews his argument that compliance with the Grand Jury's subpoena violates Natale Richichi's Sixth Amendment right to counsel.

## II. *GOODMAN'S GROUNDS FOR QUASHING THE GRAND JURY SUBPOENA*

### A. Improper Use of the Subpoena as a Discovery Tool

■ Mr. Goodman contends that because the Grand Jury has already returned an Indictment against Natale Richichi as an alleged participant in a "Klein Conspiracy", the Government's effort to enforce the Grand Jury subpoena amounts to improper pretrial discovery by the Grand Jury. The Government categorically denies this allegation and responds that the Grand Jury is continuing its investigation in good faith, and that the subpoenaed records are relevant to the Grand Jury's legitimate investigation of other criminal activity for which Natale Richichi or others may be accountable. In support of its position, the Government has submitted the declaration of Government counsel for the Court's *in camera* inspection. *See* Government's *In Camera* Submission (# 39).

Mr. Goodman's argument is one that has been characterized by the Ninth Circuit as "easily voiced" and "difficult to prove or disprove." *United States v. Pressman,* 586 F.2d 724, 725 (9th Cir.1978). In the absence of evidence to support such a claim, the Ninth Circuit has "rejected the need for imagining [an improper purpose] after the government denies it." *Id.* Furthermore, [w]hile it may be improper to call a grand jury witness *solely* to prepare a previously indicted case for trial, the government has every right to "interrogate witnesses on subjects relevant to a pending indictment." *Id.* (citations omitted) (emphasis in original).

Here, as in *Pressman,* Mr. Goodman has failed to present any evidence to support his accusation that the *sole* purpose of the subpoena is for pretrial discovery purposes, and the Government has categorically denied Mr. Goodman's allegations. This Court's examination of the record reveals no evidence of such an improper purpose, and thus finds that Mr. Goodman's allegations to the contrary amount to mere speculation. Moreover, the Court has examined the Government's *in camera* submission regarding the extent of the Grand Jury's continuing investigation and finds that the investigation, as well as the continued effort to enforce the subpoena, is undertaken in good faith and that the subpoenaed documents may be material to the Grand Jury's ongoing investigation. *See* Government's *In Camera* Submission (# 39). Therefore, Goodman's Motion to quash the subpoena on the ground that it is

being employed as an improper discovery device will be denied.[3]

### B. Other Instances of Alleged Government Misconduct

Mr. Goodman further argues that the Grand Jury subpoena should be quashed because the Government misled the Court as to the necessity of his appearance before the Grand Jury. Mr. Goodman claims that the Government suggested that he was withholding material evidence and "implied" that an Indictment could not be returned without compliance. Mr. Goodman further argues that the Government's position was misleading because Natale Richichi was indicted without the subpoenaed records.

The Court finds Mr. Goodman's argument to be unsupported by the record in this case. The assertion of the Government throughout these contempt proceedings has been that Goodman's actions "involve[ ] the withholding of material evidence from an important grand jury investigation, which has not only delayed the grand jury's investigation, but is impairing the grand jury in its ability to properly carry out its duties." Government's Memorandum of Points and Authorities Concerning the Court's Options and the Government's Position Re: Mr. Goodman's Continued Defiance of the Court's Order (# 27), at 8. The Court finds there is nothing to indicate that the Government regards the subpoenaed records as mere "persiflage", nor any evidence to indicate the Government took the position that it could not indict Natale Richichi without the records.

Mr. Goodman also argues that because the Government initially requested incarceration to coerce him into compliance with the subpoena and then subsequently requested the sanction be changed to a monetary fine, the Government is improperly attempting to punish rather than coerce him. However, Mr. Goodman does not provide any evidence or authority for his assertion that simply changing a request for incarceration to monetary sanctions is, in itself, punitive in nature.

The Government responds that the circumstances surrounding these proceedings, particularly the substantial amount of media attention Mr. Goodman's actions have thus far generated, are such that monetary sanctions are more likely to induce him to produce the subpoenaed documents.

The Government's argument in this regard is bolstered by the materials filed under seal on November 28, 1994, in the form of a Declaration of Government counsel (# 47) with exhibits in the form of transcripts of other proceedings before Special Federal Grand Juries before which Mr. Goodman was subpoenaed to produce fee records pertaining to clients. Indeed, statements made by Mr. Goodman before the Special Grand Juries on those occasions are most revealing regarding his understanding of the non-privileged nature of such documents, and his obligation to produce client fee records when ordered to do so by the Court. *See* Government's Sealed Declaration (# 47), Exhibits "1"–"4", inclusive.[4]

For example, in 1979, Mr. Goodman appeared before a Special Federal Grand Jury

---

**3.** With regard to continuing a Grand Jury investigation postindictment, the Ninth Circuit has further noted the following:

There is no legal basis for barring a grand jury investigation simply because there is an outstanding indictment involving persons not being called as witnesses. *In re Santiago,* 533 F.2d 727 (1st Cir.1976). There is also no bar to investigation of other areas of criminal liability for which the defendants or co-defendants may be accountable. *In re July 1973 Grand Jury,* 374 F.Supp. 1334 (N.D.Ill.1973). Indeed, the duties of the grand jury are not performed until every clue and all witnesses are examined in order to charge the proper person with the appropriate crime. *United States v. Collins,* 272 F.2d 650 (2d Cir.1959).

*Pressman,* 586 F.2d at 725.

**4.** Grand Jury proceedings are, of course, subject to the General Rule of Secrecy provided by Rule 6(e)(2) of the Federal Rules of Criminal Procedure. The Court finds, however, that in this case a limited exception to the General Rule of Secrecy provided by Rule 6(e)(3)(C)(i) should be invoked. The pertinent portions of Mr. Goodman's testimony cited, *infra,* do not disclose the nature of the Grand Jury investigations involved in the prior proceedings, nor do they identify the subjects of the Grand Jury investigations or Mr. Goodman's former clients. The quoted excerpts of Mr. Goodman's testimony do, however, illustrate his understanding of the discoverability of client fee records subpoenaed by a Grand Jury.

in response to a subpoena duces tecum which, in part, requested production of:

All records, including statements of accounts, ledgers, billings, and receipts containing, showing, and reflecting the following:

1. All fees billed to and received from the following individuals and entities for the period of time ...

In response to that Grand Jury subpoena and an inquiry of counsel for the Government as to whether Mr. Goodman intended to supply the subpoenaed records to the Grand Jury, Mr. Goodman stated that he would not do so without a court order. When asked to explain what he meant by that statement, Mr. Goodman responded:

I believe that there is a certain relationship between attorneys and clients, and I believe that in order for the legal system to preserve its integrity that that relationship must be maintained. My clients, when they pay me moneys, may be under the impression that those moneys bear a confidential cloak or shield from inspection by persons such as a Grand Jury. *It's my position that if a Court should order me to produce those records, I will make them readily available. However, I believe that I owe it to my clients to at least have the Court litigate that particular issue, to go over the arguments that I would intend to make in front of the Court, and then, if I am not successful with those arguments, those records are yours.*

Grand Jury Transcript, attached as Exhibit "1" to Government's Sealed Declaration (# 47), at 8 (emphasis added).

Mr. Goodman further testified that:

.    .    .    .    .

If a Judge, whoever, after reviewing the records, perhaps in camera, feels the Grand Jury is entitled to them, I will make them available. *But I need a Judge to direct me in order to preserve the integrity of my relationship with my clients.*

*Id.* at 9 (emphasis added).

At the conclusion of his testimony before the Special Federal Grand Jury in 1979, Mr. Goodman was asked by counsel for the Gov-

ernment whether he had any further statements. Mr. Goodman responded:

Just I find this, our discussions concerning the attorney-client situation, to be a fascinating one to the point where I am giving a speech before the Nevada Trial Lawyers Association on October the 5th, and I have chosen as my topic as a result of my interchange with ... over the past two weeks—*the subject matter is going to be entitled "Does Your Client Know You are an Officer of the Court?" I think that there is a basic misconception on the part of the clients when they deal with an attorney that everything they do with their attorney is of a privileged nature. At least I find it so with my clientele.* They feel that when they give money, they give moneys to retain myself, that that is not subject to disclosure. Having gotten into this situation, I look forward to my litigation with....

*Id.* at 44 (emphasis added).

When asked whether the foregoing statement constituted a policy which Mr. Goodman represented to his clients, Mr. Goodman responded:

No, not as a policy. *I am just saying that this is a general misconception between the attorney-client relationship and what is commonly known as the attorney-client privilege, and the average layman doesn't make that distinction or misunderstands those two concepts, in my opinion. I think that attorneys as a result of this experience have the obligation from now on, at least in my office, when clients come in to explain that very carefully, that there is a difference between the relationship and the privilege.*

*Id.* at 45 (emphasis added).

Finally, in response to a question from a Grand Juror regarding the ability of a governmental agency to examine records of his law firm pertaining to fees paid by clients, Mr. Goodman responded in part: *"If the Court said they were entitled to look at my books, of course I am not going to violate a court order." Id.* at 47 (emphasis added).

██ Transcripts of other proceedings occurring before other Special Grand Juries in

1978, 1985, and 1986, in which Mr. Goodman was called upon to provide fee records pertaining to clients he represented, and which have been submitted under seal for review by the Court as part of the Government's Declaration (# 47), show that Mr. Goodman has a clear understanding of his obligations to obey court orders with respect to the production of fee records such as those at issue in this case.

Mr. Goodman's Responses, Declaration and *In Camera* Submission (## 49 and 50) filed November 30, 1994, under seal, indicate that there were factors pertinent to his prior appearances before the above-referenced Grand Juries which distinguish his conduct in those cases from the case before the Court. This Court is, however, unpersuaded that the distinguishing factors cited by Mr. Goodman, justify his continued refusal to comply with the Grand Jury subpoena and the Order of this Court. Indeed, although different facts may pertain to each of Mr. Goodman's prior appearance before a Federal Grand Jury, the legal principles governing his obligations are the same.

■ The Court finds that the Government has articulated a sufficient justification for its position regarding the appropriate coercive sanction to be imposed for Mr. Goodman's contempt. Regardless, Mr. Goodman's argument fails to recognize that the decision of whether to impose any coercive sanction for a contempt, and the form of that sanction, is vested with the Court, not the Government. Accordingly, the Court finds that Mr. Goodman's assertions of Government misconduct are without merit and do not support quashing the Grand Jury subpoena. The Court further finds that given Mr. Goodman's previous history of complying, however reluctantly, with Orders of the Court to produce client fee records called for under Grand Jury subpoenas, the reality of a monetary sanction will be sufficiently coercive to induce Mr. Goodman to comply with the Court's Order in this case, which calls upon him to do precisely the same thing.

## C. Issuance of the Press Release

■ Mr. Goodman further argues that the Government engaged in misconduct by issuing a press release, in contravention of 28 C.F.R. § 50.2, "which maligned Mr. Goodman by threatening the specter of criminal contempt." Goodman's Response (# 37), at 6.

28 C.F.R. § 50.2 sets forth guidelines which govern the release of information by personnel of the Department of Justice relating to criminal and civil proceedings. Subsection (b)(2), presumably the provision Goodman is claiming was violated, prohibits the Government from making statements that are intended to, or reasonably may, influence the outcome of a pending or future trial. The regulation further provides that any "[d]isclosures should include only incontrovertible, factual matters, and should not include subjective observations." 28 C.F.R. § 50.2.

The Court has examined the press release in question and finds that its content is not of the sort that would reasonably be expected to influence the outcome of a pending or future trial. The press release merely provides an account of Mr. Goodman's efforts in appealing this Court's contempt Order to the Ninth Circuit and the United States Supreme Court. It further explains the disposition of Mr. Goodman's appeal and notes the existence of sanctions that might be imposed against Mr. Goodman as a result of his continued contempt. All the disclosures contained in the press release are objective statements of fact and matters of public record. The Court finds no basis to conclude the press release was intended to influence, nor that it is likely to influence, the outcome of a pending or future trial. Therefore, the Court finds that the issuance of the press release does not amount to misconduct by the Government which would warrant quashing the Grand Jury's subpoena.

## III. *GOODMAN'S RENEWED SIXTH AMENDMENT ARGUMENT*

■ The Ninth Circuit Court of Appeals has already rejected Mr. Goodman's Sixth Amendment right to counsel claim on behalf of his client, Natale Richichi, as "premature

and speculative." *Goodman,* 33 F.3d at 1063. This Court finds that it still is.

Mr. Goodman still has not "shown that the Grand Jury subpoena was issued for an improper purpose such as harassment or prosecutorial abuse." *Id.* Additionally, and notwithstanding Mr. Goodman's argument that his client now claims he would terminate his attorney-client relationship with Mr. Goodman if he complies with the Grand Jury subpoena, the Court finds Mr. Goodman still has not "shown that compliance will create an *actual* conflict between him and his client, Natale Richichi, that *interferes with their attorney-client relationship.*" *Id.* (emphasis added). Furthermore, nothing presented by Mr. Goodman alters the following admonition provided by the Ninth Circuit in rejecting his Sixth Amendment claim:

> Goodman should have informed his client in advance that fee information is generally unprotected. Having failed to do so, Goodman cannot instead rely on the Sixth Amendment right to counsel as a basis for refusing to produce the fee records. *See Tornay* [*v. U.S.*] 840 F.2d [1424] at 1429–30. [ (9th Cir.1988).]

*Id.*

Indeed, based upon the testimony given by Mr. Goodman in previous and unrelated proceedings before Special Federal Grand Juries, it is absolutely clear to this Court that Mr. Goodman understood his obligation to comply with the Ninth Circuit's admonition. Under the circumstances, this Court must reject his claim that compliance with the Grand Jury subpoena will violate Natale Richichi's Sixth Amendment right to counsel.

## IV. *COERCIVE SANCTIONS TO BE IMPOSED UPON GOODMAN*

Having found that no grounds exist for quashing the Grand Jury's subpoena, and given Goodman's continued refusal to provide the requested documents, this Court must now determine the appropriate coercive sanction to be imposed.

The authority for imposing a coercive sanction upon a recalcitrant witness in connection with grand jury proceedings is found in Title III, § 301(a) of the Omnibus Crime Control Act of 1970, 28 U.S.C. § 1826(a). *See Matter of Grand Jury Impaneled Jan. 21, 1975 (Freedman),* 529 F.2d 543, 550 (3d Cir.1976), *cert. denied,* 425 U.S. 992, 96 S.Ct. 2203, 48 L.Ed.2d 816 (1976). The statute on its face, however, refers only to incarceration as a means of compelling compliance with a grand jury subpoena. Nonetheless, a number of courts have recognized a district court's power to impose coercive fines upon a contumacious witness under 28 U.S.C. § 1826(a). *See e.g., Freedman,* 529 F.2d at 551 (district court may impose coercive monetary fine); *In re Dinnan,* 625 F.2d 1146, 1150 (5th Cir. 1980) (a finding of civil contempt permits the coercive combination of both fine and imprisonment); *accord* 7A *Federal Procedure, L.Ed.* § 17:41, at 51 ("The recalcitrant witness statute . . . does not remove from the courts the power to impose a coercive fine on contumacious witnesses. . . .").

The decision as to the appropriate sanction that should be imposed to coerce a recalcitrant witness into compliance is left to this Court's discretion and will not be disturbed absent an abuse of discretion. *United States v. Flores,* 628 F.2d 521, 527 (9th Cir.1980). In fashioning the sanction, however, the Court "should apply the least coercive sanction (e.g., a monetary penalty) reasonably calculated to win compliance with its orders." *Id.* (citing *Freedman,* 529 F.2d at 551.). After examining the record in this case, including the circumstances surrounding Goodman's refusal to turn over the fee records, the Court finds that a monetary sanction is appropriate to compel compliance with the Grand Jury subpoena and this Court's prior Order (#11). In the event such a monetary sanction proves ineffective, the Court will consider an alternative means of compelling Mr. Goodman to comply with the subpoena and this Court's Orders.

## V. *CONCLUSION*

The record in this case indicates that the fee information called for under the Grand Jury subpoena is important to the Grand Jury's ongoing investigation in this case. The Court has now had the opportunity to review, *in camera,* the fee records at issue (#48), and concludes that further withhold-

ing of this information from the Grand Jury creates a substantial risk that the Grand Jury's investigation may be hindered. Therefore, the harm threatened by Mr. Goodman's continued refusal to comply with the Grand Jury subpoena, and his contempt of this Court's Order to do so, is significant. Furthermore, the Court finds that the circumstances surrounding this case indicate that appropriate monetary sanctions are likely to induce Goodman to comply with the Court's Order and to produce the documents subpoenaed by the Grand Jury.[5]

Finally, the Court concludes that Mr. Goodman can no longer have a good faith basis for refusing to comply with the Grand Jury subpoena. The body of law relating to the generally nonprivileged nature of client fee records, as well as the obligation of attorneys to so advise their clients, has long been established. Indeed, Mr. Goodman has recognized his obligations in this regard for years, and has conducted himself accordingly at prior Grand Jury proceedings. When this Court granted the Government's request that the Order of Contempt of May 13, 1994, be stayed, it was with the clear understanding that the stay was invoked solely for the purpose of allowing Mr. Goodman to appeal the matter as he contended he had a good faith basis to attempt to change the case law in this area. Mr. Goodman's appellate efforts in this regard have been rejected by both the Ninth Circuit Court of Appeals and the United States Supreme Court, and no sufficient additional ground has been asserted by Mr. Goodman to justify further defiance of the Grand Jury subpoena or compliance with the Order of this Court. Mr. Goodman has discharged his obligation as counsel to his client regarding this particular issue. Mr. Goodman must now discharge what he recognized as his responsibility before the Grand Jury in his 1979 testimony, that is, his obligation as an officer of the Court by complying with the Order to pro-

vide the documents required under the Grand Jury subpoena at issue.

IT IS THEREFORE ORDERED THAT this Court's Order of Contempt, originally entered against Oscar Goodman, Esq., on May 13, 1994, is hereby confirmed.

IT IS FURTHER ORDERED THAT Oscar Goodman, Esq., as custodian of records for the law firm of Goodman & Chesnoff, shall appear before the Special Grand Jury sitting at Las Vegas, at its next regularly scheduled meeting on Tuesday, December 6, 1994, and shall there produce the fee records requested by the Grand Jury subpoena duces tecum served December 6, 1993.

IT IS FURTHER ORDERED THAT in the event Oscar Goodman, Esq., fails to comply with this Order, he shall on that date, December 6, 1994, pay as and for a coercive monetary sanction to the Clerk of Court, the sum of $25,000.00. For each day thereafter that Oscar Goodman, Esq., refuses to comply with the Order of this Court, he shall pay a further sum of $2,500.00 per day to the Clerk of Court, which payment shall continue each day until he either complies with the Grand Jury subpoena duces tecum or until further Order of this Court or an appellate Court of competent jurisdiction.

IT IS FURTHER ORDERED that the *in camera* submissions received from the Government on November 11, 1994, and from Mr. Goodman on November 28 and November 30, 1994 (## 39, 48, and 49 respectively) shall be retained by the Clerk of Court in a sealed condition as part of the permanent record in this case and for use, if necessary, for appellate review.

---

5. In determining the appropriate amount of the monetary sanction it will impose for the purposes of coercing Mr. Goodman into compliance, the Court has considered the following: (1) the character and magnitude of the harm threatened by continued contempt; (2) the probable effec-

tiveness of the proposed sanction; and (3) the financial consequence of that sanction upon Mr. Goodman. *United States v. United Mine Workers of America*, 330 U.S. 258, 304, 67 S.Ct. 677, 701, 91 L.Ed. 884 (1947).